**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| PERRY APSLEY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 05-1368-MLB |
| | ) | |
| THE BOEING COMPANY, THE ONEX, | ) | |
| CORPORATION, AND SPIRIT | ) | |
| AEROSYSTEMS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter comes before the court on plaintiffs' motion for conditional class certification and notice. (Doc. 79.) The motion has been fully briefed and is ripe for decision. (Docs. 80, 81, 90, 95.) Plaintiffs' motion is GRANTED, for reasons set forth herein.

**I. FACTS AND PROCEDURAL HISTORY**

Plaintiffs, all former employees of The Boeing Company (Boeing), allege that defendants terminated their employment or refused to hire them based on plaintiffs' age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. (Doc. 80 at 1.) Proceeding under provisions of the ADEA that allow for claims to be pursued for a class of similarly situated individuals, plaintiffs seek conditional certification as a class so that notice of the action may be sent to all former Boeing employees who meet the following criteria:

> (a) previously worked for Boeing's Wichita/Tulsa Division; (b) were terminated, laid off by Boeing or not hired by Onex in connection with the sale of the Boeing Wichita/Tulsa Division between January 1, 2002 and July 1, 2005; and (c) were

age 40 or older on the date of termination,
layoff or non[-]hire.

(Doc. 80 attach. 2 at 1.)

Defendants concede that conditional certification is appropriate at this stage of the case, but object to the scope of the putative class, as well as other deficiencies in the proposed notice. (Doc. 90 at 2, 4-5.) Specifically, defendants contend that the class may include only those former Boeing employees terminated as part of the divestiture of its commercial division to Spirit Aerosystems (Spirit) that occurred in May and June of 2005. Id. at 4. Defendants argue that individuals terminated prior to that time are not similarly situated with those who were fired in mid-2005, at which time Boeing terminated all of its employees within its commercial division. Id. at 5-7. Furthermore, defendants argue that plaintiffs who were terminated prior to the mass-layoffs in 2005 failed to exhaust their administrative remedies inasmuch as plaintiffs have provided no evidence that any such plaintiff filed an ADEA charge with the Equal Opportunity Employment Commission (EEOC). Id. at 7-9. Finally, defendants argue that only those individuals who completed re-hire paperwork with Spirit can properly be considered as potential class members. Id. at 6-7.

Plaintiffs agree with a number of defendants' objections, (Doc. 95 at 2), but insist that the scope of the class must extend back to January 2002 because it was around this time that Boeing concocted a plan to begin reducing the age of its workforce.[1] Id. at 6. In

---

[1] Plaintiffs failed to address one of defendants' objections to the proposed form of notice. Defendants objected to the date that the lawsuit was filed and a reference to the assertion that over 400

response to the charge of failure to exhaust remedies with the EEOC, plaintiffs rely on the "single filing rule," which allows plaintiffs who did not file a charge in an ADEA collective action to join the lawsuit so long as they are similarly situated with plaintiffs who did timely exhaust their administrative remedies.  (Docs. 40 at 9; 95 at 4;) see also Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1111 (10th Cir. 2001).   Finally, plaintiffs object to defendants' contention that the class should be limited to only those persons who completed the required paperwork necessary to be considered for a job with Spirit, arguing instead that the form was illegal because it "purported to waive the right to challenge the legality of Boeing's conduct."  (Doc. 95 at 3.)

In sum, there are only two disputed issues before the court. First, whether the class should extend back to January, 2002.  And second, whether completion of the re-hire paperwork should be a necessary condition for class participation.

## II.   ANALYSIS

Plaintiffs claim that defendants discriminated against them on the basis of age in violation of section 4 of the ADEA, 29 U.S.C. § 623.  (Doc. 40, 2d Am. Compl., at 43-44.)   The ADEA authorizes plaintiffs to proceed as a class under the opt-in class action provisions of the Fair Labor Standards Act, 29 U.S.C. § 216(b). Pursuant to section 216(b), one or more named plaintiffs may bring a collective action on behalf of themselves and "other employees similarly situated."   In order to identify similarly situated

---

additional plaintiffs had consented to join the suit.   Since plaintiffs did not respond to this objection, it is sustained.

employees, the court has authority to permit issuance of notice to potential class members. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989).

Although noting the existence of at least three different approaches to determining whether potential class members are similarly situated with named plaintiffs, the Tenth Circuit has expressly approved the use of the so-called "ad hoc" approach. Thiessen, 267 F.3d at 1102, 1104.

> In utilizing this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated." Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D. Colo. 1997). In doing so, a court "'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" Id. (quoting Bayles, 950 F. Supp. at 1066). At the conclusion of discovery (often prompted by a motion to decertify), the court then makes a second determination, utilizing a stricter standard of "similarly situated." Id. at 678. During this "second stage" analysis, a court reviews several factors, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the ADEA before instituting suit." Id.

Id. at 1102-03.

This case is currently at the notice stage. Accordingly, the question is whether plaintiffs have put forth substantial allegations that potential class members were terminated because of a single policy or plan. The court finds that they have.

Specifically, plaintiffs allege that Boeing began considering the sale of its commercial division at least as early as January of 2002.

(Doc. 40 at 35.)   Presumably in order to make this asset more attractive to potential buyers, plaintiffs allege that Boeing conceived a plan to reduce the average age of its workforce.  <u>Id.</u> at 34-38.   This plan involved encouraging older workers to retire or quit, and terminating many who would not leave voluntarily.   <u>Id.</u> Plaintiffs allege that it was pursuant to this plan that plaintiffs Montgomery and Wells were fired in 2002 and plaintiff Burrows was terminated in 2003.   (Doc. 40 at 13, 22, 30.)   Assuming the truth of these allegations, the court concludes that plaintiffs have alleged a single policy or plan that resulted in the termination of older workers as far back as January of 2002.   Thus, according to <u>Thiessen</u>, plaintiffs have met their burden to show that putative class members are similarly situated at the notice stage.

Against this conclusion, defendants argue that plaintiffs who were terminated prior to the mass-layoffs in 2005 could not possibly be similarly situated with those who were let go just prior to the sale to Spirit.   (Doc. 90 at 6-7.)   However, defendants' argument ignores the plain statements in <u>Thiessen</u> that plaintiffs need merely make substantial allegations that the terminations resulted from a single plan or policy.   <u>Thiessen</u>, 267 F.3d at 1102.   Under that standard, it is irrelevant that some plaintiffs were terminated under different circumstances than others.  If all the terminations were the result of a policy to rid the company of older workers, that is sufficient at this stage of the proceedings.

Continuing, defendants argue that plaintiffs discharged more than 300 days prior to the 2005 layoffs may not participate because they have failed to exhaust their administrative remedies.   (Doc. 90 at 7-

-5-

9.)  Defendants base this argument, at least in part, on the fact that

the only EEOC charges included in the record listed January 1, 2005

as the earliest date of discriminatory conduct, without indicating

that the plaintiffs were charging a continuing violation.  (Doc. 81.)

     Ultimately, this argument may have merit.  While not every

plaintiff in an ADEA collective action needs to file an EEOC charge,

Thiessen, 267 F.3d at 1110-11, there is a requirement that each

plaintiff must have been able to file a charge at the time one or more

of the other plaintiffs actually filed their charges.  Id.  Since the

allegations of unlawful discharge by Montgomery, Wells, and Burrows

occurred more than 300 days before January 1, 2005, it could be that

their claims will be barred by their failure to file a timely charge

with the EEOC.[2]  However, under Thiessen, the question of "whether

_____

     [2] Plaintiffs argue that Thiessen allows for a class period
extending back beyond the 300-day limit based on mere allegations of
a continuing violation.  (Doc. 80 at 7.)  Thus, plaintiffs appear to
suggest that, since they alleged in their complaint a continuing
violation beginning in January of 2002, they are entitled to include
all terminations occurring after that date without regard to the
contents and timeliness of the EEOC charges that were actually filed.
However, a review of Thiessen counsels against that conclusion.  The
Thiessen opinion did not include the entirety of the actual language
of the EEOC charge filed in that case.  Since Thiessen was filed in
the District of Kansas, this court reviewed the complaint filed in
that case.  Included as an attachment to the complaint was an EEOC
charge that contained an extensive narrative chronicling the allegedly
discriminatory policies of the defendant in that case.  Thiessen v.
Gen. Elec. Capital Corp., No. 96-2410-KHV, Doc. 4, 1st Am. Compl.
attach. 1 exh. B.   The EEOC charge specifically referred to the
implementation of the discriminatory policy and its application to
plaintiff in September of 1993, id., from which the Court of Appeals
concluded that "the class should, at this stage of the proceedings,
include all those plaintiffs whose related claims (i.e., adverse
employment actions resulting from application of the blocker policy)
arose between September 1993 and 1995."  Thiessen, 267 F.3d at 1111.
The EEOC charges provided by plaintiffs in support of this motion do
not appear to contain any allegations that would place defendants or
the EEOC on notice that the challenged employment activities dated
back as far as January of 2002.  (Doc. 81.)  Nevertheless, ultimate

plaintiffs made the filings required by the ADEA before instituting suit" is not properly raised until the completion of discovery. Thiessen, 267 F.3d at 1103.    Thiessen cited Bayles v. Am. Med. Response of Colo., Inc., 950 F. Supp. 1053, 1066 (D. Colo. 1996), for this proposition, and Bayles in turn relied on Lusardi v. Xerox Corp., 118 F.R.D. 351, 376-77 (D.N.J. 1987), wherein the court specifically used this phrase to refer to the filing of a timely EEOC charge. Thus, resolution of this question has no bearing on the propriety of issuing notice to prospective class members.   Indeed, discovery may reveal that potential plaintiffs seeking to join the class have satisfied the EEOC filing requirement such that others who did not file an EEOC charge may nevertheless proceed with this suit.   See Thiessen, 267 F.3d at 1110-11.

Finally, with respect to the argument that completing re-hire paperwork is a prerequisite to class membership, the court finds that such a requirement is not appropriate under the facts of this case at this particular stage of the litigation.   As previously noted, substantial allegations that all putative class members lost their jobs because of a single policy or plan is sufficient to warrant conditional certification at this point. Thiessen, 267 F.3d at 1102. The crux of plaintiffs' case is that Boeing's efforts to reduce the average age of their workforce began in January of 2002.  (Doc. 40 at 35.)  That constitutes allegations of a single policy driving all the subsequent terminations.   Requiring completion of the re-hire paperwork would necessarily exclude those potential class members who

---

resolution of this issue must await completion of discovery.

were terminated before any re-hire paperwork ever came into existence. Such a result would be inconsistent with the "single policy" rule under which this motion must be decided.   Furthermore, since plaintiffs' complaint contains allegations that the re-hire paperwork was unlawful, (Doc. 40 at 40-41), and plaintiffs argue that some potential plaintiffs may have refused to complete the forms on that basis, the mere failure to complete the forms cannot be construed as an absolute indication that certain individuals did not desire to continue their employment with Spirit.  (Doc. 95 at 3.)  For all these reasons, the court finds that completion of the re-hire paperwork shall not be part of the criteria for determining who receives notice of this action.

In sum the court finds that notice of the collective action may be sent to all former Boeing employees who were terminated by Boeing on or after January 1, 2002; who were 40 years of age or older at the time of termination; and who were not hired by Spirit.  The notice plaintiffs attached to their brief will be sufficient if modified to conform to these requirements and to the changes proposed by defendants and conceded to by plaintiffs or otherwise waived.[3]  (Doc. 95 at 2.)  Defendants shall provide plaintiffs with the names and last known addresses of all former employees who meet the specified criteria.  This matter is hereby referred to the magistrate judge to establish a timetable for completion of all tasks necessary for the opt-in process.

A motion for reconsideration of this order under Local Rule 7.3

---

[3] See supra, note 1.

-8-

is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

        IT IS SO ORDERED.

        Dated this    15th    day of November 2006, at Wichita, Kansas.

                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE