## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **PERRY APSLEY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 05-1368-MLB** |
| | ) | |
| **THE BOEING COMPANY, THE ONEX** | ) | |
| **CORPORATION, and SPIRIT** | ) | |
| **AEROSYSTEMS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs' motion to compel defendants to answer discovery requests.  (Doc. 97).  For the reasons set forth below, the motion shall be GRANTED IN PART and DENIED IN PART.

### Background

This lawsuit arises from Boeing's sale of its commercial airplane manufacturing facilities in (1) Wichita, Kansas; (2) Tulsa, Oklahoma; and (3) McAlester, Oklahoma.[1]

---

[1] The Wichita, Tulsa and McAlester facilities comprised Boeing's "Wichita Division."  Boeing also has facilities for "military-related" operations in Wichita which were not sold and are not a part of this litigation.  In the context of this opinion and the lawsuit, the terms "facilities" or "operations" refer to Boeing's commercial airplane manufacturing business.

Highly summarized, plaintiffs allege that, "as early as January 2002," Boeing engaged in a "common scheme" of discrimination against older workers when the company began efforts to sell its Wichita Division.  Doc. 40, p. 35.  Plaintiffs contend that Boeing "made several 'low-key' layoffs" of older workers in 2002 and 2003 to make a prospective purchase of its Wichita operations more attractive to buyers by reducing pension and health care costs.  Doc. 40, p. 35.

Boeing admits that in September 2003 a team of Boeing employees was formed to sell the Wichita Division.[2]  Doc. 115, p. 4.  In 2004 Boeing publicly announced its intention to sell its commercial facilities in Wichita and Oklahoma and eventually negotiated an Asset Purchase Agreement with defendant Onex, a Canadian corporation.   As part of the transaction, Onex created a new business entity, Spirit AeroSystems Inc., to own and operate the Wichita and Oklahoma facilities.[3]

Spirit announced plans to continue operating the commercial manufacturing facilities. However, Boeing employees who wanted to continue their employment with Spirit were required to submit an application.  After reviewing work records and interviewing Boeing managers, Spirit hired some, but not all, of the Boeing employees who sought to continue

---

[2]

The project to offer these facilities for sale was known as "Project Lloyd."

[3]

The original name of the new company was Mid-Western Aircraft System Inc. However, in July 2005 Mid-Western changed its name to Spirit AeroSystems Inc.

employment with Spirit.[4]

Plaintiffs seek to proceed as a class action and allege that Boeing and Onex engaged in unlawful age discrimination in the layoff and rehire process.  Doc. 40, pp. 43-44.[5] Plaintiffs also contend that Boeing and Onex (1) intentionally interfered with their ERISA pension rights, (2) breached collective bargaining agreements, and (3) unlawfully retaliated against employees who had previously exercised protected employment rights.[6]  Doc. 40, pp. 44-47.  Additional facts and contentions are included in the analysis of the parties' discovery disputes.

---

[4]     Plaintiffs allege that the "common scheme" of discrimination climaxed with major layoffs in May and June of 2005.  Doc. 40, p. 35.  Boeing denies plaintiffs' claims of discrimination and argues that *all* employees in the affected facilities were terminated by June 16, 2005, the effective date of the Asset Purchase Agreement.  Spirit assumed operations on June 17 and the former Boeing employees who were rehired began working for Spirit that same day.

[5]     Plaintiffs allege that (1) Onex is the parent company of Spirit Aerospace [sic], (2) Spirit was "not properly capitalized and (3) Spirit and Onex share the same directors, officers and employees.  Doc. 40, p. 32.  Although not expressly alleged in the complaint, plaintiffs apparently seek to pierce the corporate veil between Onex and Spirit.

[6]     Plaintiffs' claims that defendants violated (1) Title VII record keeping requirements by failing to maintain records and (2) other federal statutes by requiring employees to sign releases have been dismissed.  Memorandum and Order, Doc. 139, filed December 18, 2006.  Defendants' motion to dismiss plaintiffs' remaining ERISA claim has been denied.  Id.

### Motion to Compel

Plaintiffs move to compel (1) Boeing to answer five interrogatories and produce documents responsive to eleven production requests and (2) Spirit to produce documents responsive to twelve production requests.  Doc. 97.  Plaintiffs also ask the court to approve a temporal scope of discovery commencing January 1, 2000 and to rule on plaintiffs' email search protocol.  Doc. 104.  Defendants oppose the motion, arguing that the discovery requests (1) seek irrelevant information, (2) are overly broad and/or (3) unduly burdensome. Plaintiffs counter that the information requested is relevant and that defendants have failed to show that producing the information is unduly burdensome.

The standards concerning the scope of discovery are well established.  Rule 26(b)(1) provides:

> **In General.**  Parties may obtain discovery regarding *any matter, not privileged, that is relevant to the claim or defense of any party*, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  *All discovery is subject to the limitations imposed by Rule 26(b)(2)(I), (ii), and (iii).* (Emphasis added).

The limitations in Rule 26(b)(2)(I), (ii), and (iii) are:

> (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties'

resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.[7]

Relevance, at the discovery stage, is broadly construed.  Generally, "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."  Sheldon v. Vermonty, 204 F.R.D. 679, 689-90 (D. Kan. 2001)(citations omitted).[8]  When the discovery sought appears relevant on its face, the party resisting discovery has the burden of demonstrating that the

---

[7]

Rule 26(b)(2) was amended effective December 1, 2006 to address electronic discovery.  The limitations described in parts (I), (ii), and (iii) remain unchanged.

[8]

Citing a 1991 case, plaintiffs assert that a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing on the *subject matter* of the action."  Snowden v. Connaught Lab., Inc., 137 F.R.D. 336, 341 (D. Kan. 1991)(emphasis added).  However, the holding in Snowden was based on the 1991 version of Fed. R. Civ. P. 26(b)(1) which has since been amended.  As noted above, the current version of Rule 26(b)(1) limits the scope of discovery to "any matter, not privileged, that is relevant to the *claim or defense* of any party."  (Emphasis added).  There has been no showing of "good cause" for more expansive discovery; therefore, the scope of discovery in this case is limited to the claims and defenses asserted by the parties.

Rule 26(b)(1) was amended in 1993 "to enable the court to keep tighter rein on the extent of discovery" because the "information explosion of recent decades" greatly increased the potential cost, delay, or oppression caused by wide-ranging discovery.  Advisory Committee Notes, 1993 Amendments to Rule 26.  Rule 26(b)(1) was again amended in 2000 to further narrow the scope of discovery and "involve the court more actively in regulating the breadth of sweeping or contentious discovery."  Advisory Committee Notes, 2000 Amendments to Rule 26.  Cases predating these amendments must be carefully scrutinized given the current version of Rule 26(b)(1) and the increased emphasis on judicial management of the discovery process.

requested information does not fall within the scope of discovery defined under Rule 26(b)(1).  Hammond v. Lowe's Home Centers, 216 F.R.D. 666, 670 (D. Kan. 2003). Conversely, "when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request."  Id.

Once the threshold question of relevance has been satisfied, the analysis proceeds to whether the requested information is privileged or otherwise limited by the considerations set out in Rule 26(b)(2)(I), (ii), or (iii).  Generally, the party opposing discovery has the burden of demonstrating through detailed explanation, exhibit, and/or affidavit that the request is unduly burdensome or overly broad.  See, e.g., Horizon Holdings Inc. v. Genmar Holdings, Inc., 209 F.R.D. 208, 213 (D. Kan. 2002).  However, the court may deny a motion to compel where the discovery request is overly board or unduly burdensome on its face. See, e.g., Aikens v. Deluxe Financial Services, Inc., 217 F.R.D. 533, 538 (D. Kan. 2003). With these standards in mind, the court turns to the parties' discovery disputes.

### Temporal Scope of Discovery

Plaintiffs ask that the court "establish the scope of discovery dates from January 1, 2000 through August 30, 2006." Doc. 98, p. 19.  Defendants oppose plaintiffs' request and, for the reasons set forth below, the court rejects plaintiffs' motion for a blanket order extending discovery back to January 1, 2000.

In the first place, plaintiffs do not identify any specific discovery request at issue in their attempt to extend the discovery period back to January 2000.  Rather, plaintiffs argue

that they have alleged a continuing violation and that "at least two plaintiffs were employed and effected in 2002 and 2003." Doc. 98, p. 17. Plaintiffs also argue that courts typically permit discovery in employment termination cases for a reasonable number of years before and after the alleged discrimination.

The court agrees that it is not unusual to allow discovery in employment discrimination cases to span a reasonable number of years. However, the determination of an appropriate time span requires sufficient information and argument upon which the court can make an informed decision. Here, plaintiffs point to no specific discovery requests and the court is left to speculate regarding why January 2000 is an appropriate date.[9] At best, it appears that plaintiffs pick January 2000 because it is approximately 5 years before Boeing's sale of its facilities to Spirit (June 16, 2005). However, if the effective date of the sale is a determinative benchmark, it is not clear why discovery dating back to January 2000 is necessary.[10]

More importantly, plaintiffs specifically allege that "defendant's common scheme began as early as January 2002." Plaintiffs' Amended Complaint, Doc. 40, p. 35. Given plaintiffs' contention of when Boeing's "scheme" commenced, plaintiffs' rationale for extending all discovery back to January 2000 is not apparent. Finally, plaintiffs' brief

---

[9]

The conclusory allegation of a "continuing violation" is not sufficient justification for the time span requested by defendant. The events complained of occurred after January 1, 2002.

[10]

As previously noted, Boeing commenced "Project Lloyd" in September 2003 and publicly announced its intent to sell the Wichita facilities in 2004.

contains confusing language concerning the relevant time period.[11]

In light of the allegations in plaintiffs' amended complaint and the parties' arguments, the court concludes that a reasonable period of time for discovery extends back to January 1, 2002, the earliest date of Boeing's alleged scheme.[12]

## E-Mail Search Protocol

Plaintiffs move to compel Boeing and Spirit to produce e-mails under the following criteria:

**Covered Individuals:**

(1) all individuals involved in the decision making process of Project Lloyd; (2) all individuals involved in the decision to select the Wichita, Tulsa, and McAlester facilities for sale.

**Time Period:**

(1) January 1, 2000.

**Scope:**

(1) e-mail transmitting spreadsheets regarding the lay-off/no hire decisions;

---

[11]

Plaintiffs request in the text of their brief that discovery extend back to January 2000. However, in a footnote plaintiffs propose that discovery extend back to January 1, 2002. Doc. 98, p. 17, footnote. 5.

[12]

This ruling should not be construed as a determination that there is no set of circumstances where discovery before January 1, 2002 might be relevant. Rather, plaintiffs' conclusory arguments for a blanket order extending *all* discovery back to January 2000 are simply not persuasive.

(2) e-mail transmitting reports/studies/surveys regarding the costs of pensions and the age of the workforce at Boeing;

(3) e-mail about lay-off/no hire decisions;

(4) e-mail transmitting lay-off instructions or guidelines and comments regarding such instructions or guidelines;

(5) e-mail containing the following search terms:

   a.   Project
   b.   Lloyd
   c.   Retirement
   d.   ERISA
   e.   Discrimination
   f.   Age
   g.   Lay-off
   h.   Lay off
   i.   Layoff
   j.   Benefit
   k.   Onex
   l.   Spirit
   m.   Geezer
   n.   Retire
   o.   Pension
   p.   Old
   q.   Midwestern Aircraft
   r.   Healthcare
   s.   Health care

Defendants oppose the motion to compel the e-mail materials, arguing that the request is overly broad and unduly burdensome.  In support of its objection, Boeing explains (1) the process necessary to determine the location of e-mails and (2) the process for organizing and

actually searching the files after the location of the e-mail data is identified.[13]  Boeing

estimates that it will take a knowledgeable team of computer staff at least five hours per

employee to locate and retrieve e-mails stored on centralized servers.  For users who stored

e-mail in separate files on their respective hard drive or portable storage devices, Boeing

estimates that the search time per employee will exceed one day.[14]  Boeing also argues that

the number of individuals "involved in the decision making process" is large and an

unknown number of persons had multiple e-mail addresses and encrypted their e-mail

messages.[15]  Boeing also complains that the use of relatively common terms will  produce a

large volume of e-mail messages having nothing to do with the issues in this case.[16]

---

[13]

    Computer servers storing e-mail are located in (1) St. Louis, Missouri, (2) Huntsville, Alabama, and (3) Seattle, Washington.  In addition to the servers, e-mail users also retain e-mail materials on their individual computer hard drives and portable storage devices.  Because not all e-mail materials are stored on servers, Boeing would need to contact each individual user to determine where e-mail materials are located.

[14]

    Boeing's response contains a relatively technical explanation of the processes necessary to locate and search for the requested e-mail materials.  However, because the court will schedule oral argument on the issue of e-mail production, a detailed recitation of the technical requirements is unnecessary at this time.

[15]

    Assuming that plaintiffs intend to include those individuals who made the decision as to which employees would be offered jobs with Spirit, the request involves approximately 550 individuals.  With respect to "Project Lloyd" and Boeing's decision to sell its facilities, approximately 100 persons were either (1) decision makers or (2) played a significant role in providing information and advice.

[16]

    For example, plaintiffs' request for every e-mail containing the term "benefit" includes all e-mail in which the sender's signature included his or her title of "Benefits Administrator."

Spirit's objections are similar to the arguments asserted by Boeing.  However, because Spirit utilized a variety of computer resources during the early stages of its operations, the search is more complex and estimated to take at least two days per employee.[17]  In addition, Spirit currently has no software to decrypt e-mails that were previously on Boeing's system; therefore, Spirit would be forced to (1) contract with Boeing for services to decrypt the e-mails or (2) require each computer user to decrypt his or her own e-mail.

In their reply brief, plaintiffs argue that defendants' burden "is not undue and that the benefits that plaintiffs will garner from electronic mail search vastly outweigh the defendants' burdens."  Doc. 126, p. 25.  Plaintiffs also argue that defendants have failed to show an undue burden because:  (1) the number of individuals with e-mail on their individual hard drive is unknown, (2) the number of files is unknown; and (3) the number and size of the e-mail for targeted individuals is unknown.  With respect to this latter argument concerning "unknowns," plaintiffs' position is misguided.  It is precisely because there are "unknowns" that plaintiffs' request imposes a greater burden on defendants.  For example, because there are variations in the storage locations for e-mail, defendants are tasked with individually questioning each e-mail user concerning their respective practices so that all e-mail sources are identified for searching.

---

[17]

For example, Spirit contracted with an outside vendor (Cox Communications) to provide interim e-mail accounts for a limited number of Spirit employees during its first year of operations.  Spirit also utilized "legacy" e-mail files for e-mail stored on Boeing computer servers prior to June 3, 2006.  E-mails created after June 2006 are stored on a Spirit server.

Plaintiffs' argument that the benefits of discovery outweigh defendants' burden raises a more difficult question because of the expansive nature of their e-mail requests and the number of e-mail users involved.  In order to better evaluate this discovery request, the court will set this matter for a hearing.  At a minimum, the parties should address the following questions:

1.  How many persons are covered by plaintiffs' e-mail search protocol?[18]

2.  Although Boeing has estimated the amount of hours to locate and search for e-mail, what is the estimated cost?

3.  Exactly what are the "benefits of discovery" that plaintiffs reference?

4.  Does the number of search terms materially increase the cost?

5.  Should the costs of electronic discovery be borne by plaintiffs?

6.  Is there a more efficient method for discovery than electronic searches?

7.  What computer resources or expertise did plaintiffs rely on in formulating a search protocol?  If the information is produced, how will plaintiffs' process the data?

---

[18]

As noted, it is unclear whether the search involves 550, 100, or a smaller number of people.  If, as argued by Boeing, the e-mail is not located in a centralized data base, the number of persons involved is a major issue.  Search of a few centralized data bases is materially different from searching 550 individual computers and/or storage systems.

## Individual Discovery Requests to Boeing

**Interrogatory No. 2**

Plaintiffs move to compel Boeing to answer the following interrogatory:

> If you contend that current or future costs related to pension or health care costs for employees was not a factor in the decision to sell the Boeing plants at issue, please provide a factual basis for such contention and identify all documents that support this contention.

Boeing did not answer the interrogatory and asserted that the request was "overly broad, unduly burdensome, vague, and not reasonably calculated to lead to admissible evidence." Boeing also asserted in a conclusory statement that its reasons for selling the Wichita Division are irrelevant to the issue of who received a job offer from Spirit.

The court is satisfied that the requested information is relevant. The theory of plaintiffs' age discrimination and ERISA claims is that defendants engaged in a scheme to reduce expenses by eliminating older employers who presumably have higher health care and pension costs and plaintiffs are entitled to know whether pension and health care costs were a factor in the decision to sell the facilities.[19]  Accordingly, plaintiffs' motion to compel Boeing to answer Interrogatory No. 2 shall be GRANTED.

---

[19] Boeing's boilerplate objections that the interrogatory is overly broad, unduly burdensome and vague are not supported and therefore rejected.

**Interrogatory No. 8**

Interrogatory No. 8 requests that Boeing:

> Identify each and every meeting that took place involving management or executive level employees regarding the sale of Boeing plants that ultimately ended with the sale of the plants at issue in this matter being sure to identify any documents that support this answer.

Boeing objected to answering this interrogatory, arguing that the request is overly broad and unduly burdensome. The court agrees. Answering the interrogatory would require Boeing to identify hundreds, if not thousands, of meetings that occurred concerning the sale of the Wichita, Tulsa, and McAlester facilities. The meetings involved a wide variety of topics such as real estate, environmental issues, supply contracts, and intellectual property that are irrelevant to the issue raised by plaintiffs' claims. Because the request is overly broad and unduly burdensome on its face, the Motion to compel Boeing to answer Interrogatory No. 8 shall be DENIED.

**Interrogatory No. 9**

Interrogatory No. 9 asks:

> If you contend that no employee was retaliated against because exercising protected rights, please provide a factual support for such contention being sure to identify all documents that support your answer.[20]

_____

[20] A number of plaintiffs' discovery requests contain questionable grammatical choices. For purposes of accuracy and consistency, the court quotes plaintiffs' discovery requests verbatim without modification or correction.

-14-

In response to the interrogatory, Boeing cited earlier interrogatory answers explaining that it terminated *all* employees in its commercial divisions at its Wichita, Tulsa, and McAlester facilities at the time of the June 16, 2005 sale to Sprint and that Boeing was not involved in the recommendations or determinations of who would be hired by Spirit.[21]  Because Boeing has explained why it contends no employee was subjected to retaliation, plaintiffs' motion to compel Interrogatory No. 9 shall be DENIED.

**Interrogatory No. 10**

> Plaintiffs ask Boeing to:

>> Please describe the process that was utilized to determine which employees would not be recommended for hire by Spirit or laid off by Boeing.

With respect to layoffs, Boeing states that it terminated *all* employees in the commercial divisions in Wichita, Tulsa, and McAlester.  Because *all* employees were terminated as part of the sales transaction, Boeing did not engage in a process "to determine *which* employees" would be laid off.[22]  Accordingly, Boeing has sufficiently answered the portion of the interrogatory concerning "layoffs."

---

[21]   In addition to citing its answers to Interrogatory Nos. 4 and 5, Boeing provided documents for individuals who (1) filed for disability, (2) filed for workers compensation, filed a lawsuit against Boeing, or (4) lodged a complaint against a manager.  Production Request No. 11.

[22]   Boeing answered Interrogatory No. 10 by citing its response to Interrogatory Nos. 4 and 5.

-15-

However, Boeing's response concerning the process of determining "which employees would not be recommended for hire by Spirit" is inadequate and incomplete. At best, Boeing argues that it "was not involved in the recommendations or determinations of who would be hired by Spirit." However, the discovery issue before the court is not whether Boeing was "involved" but rather whether Boeing is able to shed light on the facts concerning the "process."[23] Boeing shall answer the interrogatory and, at a minimum, describe its understanding of the process for "determining which employees would not be recommended for hire by Spirit." Plaintiffs' motion to compel Interrogatory No. 10 is GRANTED IN PART, consistent with the court's ruling.

**Interrogatory No. 11**

Interrogatory No. 11 asks Boeing:

> If you contend that the process used to select individuals for lay-off

---

[23] Boeing asserts in its answer to Interrogatory No. 4 that it "was not involved in the recommendations or determinations of who would be hired by Spirit" and also incorporates its answer to Interrogatory No. 3. In answering Interrogatory No. 3, Boeing again asserts that it was not involved in the recommendations or determinations of who would be hired by Spirit but also states: "**Boeing managers** were acting as representatives of the new company **in making recommendations**." Boeing's Response Brief, Doc. 115, Exhibit 1A (emphasis added).

Apparently, Boeing managers did make recommendations concerning the employees Spirit should hire. The assertion by Boeing that recommendations were made in a "representative" capacity is unresponsive to the question asked by Interrogatory No. 10. Equally important, Boeing, Onex, and Spirit are all represented in this lawsuit by the same attorneys. Factual information known to a party and its counsel must be disclosed in an interrogatory answer.

or not to hire with Spirit was not excessively subjective, please provide a factual support for such contention being sure to identify all documents that support your answer.

Again, with respect to the issue of layoffs, Boeing's answer that all employees were laid off is sufficient.  However, Boeing has not provided an appropriate answer to the question of whether or not the process for selecting individuals for hiring by Spirit was excessively subjective.  The motion to compel Interrogatory No. 11 is GRANTED IN PART and Boeing shall answer the portion of the interrogatory concerning the hiring process.

**Production Request No. 9**

Plaintiffs seek to compel Boeing to produce:

All documents, manuals, handbooks, policies, procedures, notices or directives issued by the defendant pertaining to:

        a.    Recruitment;
        b.    Selection and hiring;
        c.    Objective testing;
        d.    Subjective evaluations;
        e.    Position requirements;
        f.    Job posting;
        g.    Job assignment;
        h.    Seniority system;
        i.    Discipline;
        j.    Demotion;
        k.    Transfer;
        l.    Layoff;
        m.  Discharge;
        n.    Training programs or skill acquisition opportunities;
        o.    Investigations of employees; and
        p.    Promotions.

Boeing agreed to produce (1) written policies relating to discipline and layoff benefits, (2)

the Collective Bargaining Agreements in effect as of June 15, 2005, and (3) job descriptions in effect just before the divestiture.  However, Boeing objects to the remaining requests as irrelevant, overly broad, and unduly burdensome.

Plaintiffs concede that their request "may not be relevant on its face" but argue that the requested materials provide "important background information on how Boeing worked." Doc. 98, p. 14, footnote 4.  Plaintiffs also argue that they "are entitled to determine if defendants have any other policies that are discriminatory against older workers."  Id.

Neither argument by plaintiff is persuasive.  As noted above, the scope of discovery in Rule 26(b)(1) has been amended and narrowed and, absent a showing of good cause, the scope of discovery is limited to the claims and defenses asserted in the case.[24]  Plaintiffs' far-reaching request for discovery materials based on the need for "background information" is not sufficiently tailored to the claims or defenses asserted in this case.  Similarly, plaintiffs' assertion that they are entitled to determine whether defendants have *any other* discriminatory policies against older workers is not persuasive.  "The [2000 Amendment to Rule 26(b)(1)] signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the

---

[24]   Plaintiffs proffer no showing of "good cause" to expand the scope of discovery to "any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).

pleadings." <u>Advisory Committee Notes</u>, 2000 Amendments to Rule 26.[25]

In addition to exceeding the scope of relevant discovery, Production Request No. 9 is overly broad and unduly burdensome on its face because the request specifically asks for "*all documents*, manuals, handbooks, policies, procedures or directives issued by defendant" pertaining to the 16 areas of employment. (Emphasis added). The all-inclusive request for documents is excessive for purposes of securing "background" information. Accordingly, plaintiffs' motion to compel Production Request No. 9 is DENIED.

**Production Request No. 13**

Plaintiffs seeks to compel:

> All documents that show the *identity* of any person, company, or other entity contacted, consulted, or retained to analyze, review, or otherwise evaluate all financial aspects of the sale of any Boeing plants that ultimately ended with the sale at issue in this matter. (Emphasis added).

Boeing opposes the motion, arguing that it has identified the retained consultants that it used during the transaction and that plaintiffs have not shown why they are entitled to *all documents* showing the individuals' or companies' identities. In addition, Boeing argues that over 4,000 persons were contacted, consulted or retained concerning this transaction and that

---

[25]

Plaintiffs' suggestion that they are entitled to discover the listed employment practices because they alleged a "pattern and practice" is also not persuasive. Plaintiffs' claims in this case are based on wrongful terminations for purposes of saving healthcare and pension costs. Under the circumstances, their broad discovery request for topics such as training, promotions, or discipline are an unwarranted fishing expedition.

producing all documents that identify such individuals is unduly burdensome and overly broad.  Plaintiffs counter that Boeing's representation that it has disclosed the retained consultants' names is not a proper response to a Rule 34 request for production of documents.  Plaintiffs also argue that it requested the names of people who "were contacted and not simply retained."

The motion to compel Production Request No. 13, as currently drafted, shall be DENIED.  To the extent plaintiffs seek the identity of retained consultants, Boeing's representation that it utilized an investment banker (Goldman Sachs & Co.) and an accounting firm (KPMG) is sufficient.[26]  With respect to consultants that were contacted but not retained, the relevance of such information is not obvious and plaintiffs have failed to present a persuasive argument that such information is relevant.[27] Accordingly, the motion

---

[26]

    Under Rule 26(b)(2), the court may limit the use of a discovery method if the information is "obtainable from some source that is more convenient, less burdensome, or less expensive."

[27]

    Because financial consultants do not work for free, one would not expect a consultant who had been contacted but not retained would possess relevant information not otherwise available from Boeing or its *retained* consultants.

to compel shall be DENIED.[28]

**Production Request No. 15**

Plaintiffs seek to compel:

> All documents that reflect any aspect of a financial analysis for Project Lloyd or the sale of all Boeing plants that ultimately led to the sale of the Wichita, Tulsa and McAlester plants.

Boeing opposes the motion to compel, arguing that the request is overly broad, unduly burdensome, and requests information lacking relevance to the claims in this case. The court agrees that the request is overly broad and unduly burdensome; therefore, the motion to compel Production Request No. 15 shall be DENIED.[29] A request for "*all* documents that

---

[28]

The wording of the production request causes some uncertainty as to what is requested. It is not clear whether plaintiffs seek the identity of persons who analyzed the entire transaction (persons retained to "evaluate *all* financial aspects") or individuals who analyzed only a portion of the financial issues, such as lease or rental agreements. The number of consultants analyzing the entire financial transaction would be relatively small. However, the number of individuals providing input on the various components would be significant. To the extent plaintiffs seek the identity of persons who consulted on *any* financial aspect of the sale, the request is overly broad because it would include material on irrelevant topics such as environmental issues and supply contracts.

[29]

Plaintiffs argue that even if their request for "all documents" is overly broad, defendants must still produce documents to the extent such documents are not objectionable. Citing Johnson v. Kraft Foods North America, Inc., 236 F.R.D. 535, 542 (D. Kan. 2006). Plaintiffs' reliance on Johnson is troubling. While recognizing that a party has a duty under the federal rules of discovery to respond to the extent that discovery requests are not objectionable, Judge Waxse specifically held that no response is required "when inadequate guidance exists to determine the proper scope of a request." Id. Here, as in Johnson, an objection was properly lodged to the production request. The remaining portion of the production request fails to provide adequate guidance for Boeing to determine the proper scope of production.

reflect *any* aspect of a financial analysis" is overly broad on its face since it requires Boeing to gather and produce documents concerning subjects such as state and local sales tax issues which have no relevance to the claims in this case. Equally important, Boeing represents that electronic information stored in two of its servers related to Project Lloyd equals approximately 22 gigabytes of information and that documents made available to prospective purchasers with Boeing's Offering Memorandum filled 54 boxes.[30] Given the volume of documents and records involved, a request for "all documents that reflect any aspect" is overly broad and unduly burdensome.[31]

**Production Request No. 21**

Production Request No. 21 requests:

> All studies, reports, or analysis done by internal staff, consultants, government agencies, or others related to the pensions and/or retirement benefits of employees of each Boeing plant that Boeing considered selling during the relevant time period.

---

[30]

Boeing represents that one gigabyte is roughly equivalent to a pickup truck load of documents.

[31]

As a practical matter, even if the documents were ordered produced, plaintiffs would have to develop some type of process to narrow their search for relevant documents. The criteria should be narrowed now rather than after huge volumes of data have been produced. The court is particularly reluctant to require defendant to sort through and produce truckloads of data that has no relevance to the case.

Additionally, Boeing provided plaintiffs with an index of the documents made available to the prospective purchasers. There is no indication that plaintiffs narrowed their production requests after reviewing the index.

Boeing opposes production of the requested documents, arguing that the pension and retirement studies lack relevance for the reasons contained in its motion for judgment on the pleadings.  Doc. 99.  However, Boeing's motion for judgment on plaintiffs' claim of interference with ERISA rights was denied; therefore, its arguments concerning a lack of relevance are moot.

Boeing also argues that the request is overly broad and unduly burdensome.  The court does not agree.  Contrary to other production requests for "all documents," plaintiffs only requested "studies, reports, or analysis" of pension and retirement benefits at plants that Boeing considered selling during the relevant time period.  Because the request is sufficiently narrow, Boeing's objections that the request is overly broad and unduly burdensome are rejected.  Accordingly, plaintiffs' motion to compel the "studies, reports, or analysis" requested in Production Request No. 21 shall be GRANTED.

**Production Request No. 24**

Production Request No. 24 asks Boeing to:

> Please produce any and all documents involving negotiations (including but not limited to, all offers, counter offers, memos, letters, and rejections) between Boeing and any other entity regarding the sale of any Boeing plant, including the Wichita, Tulsa and McAlester locations within the relevant time period.

Boeing opposes the motion to compel, arguing that in the course of negotiating the sale, Boeing and Onex addressed many business issues, such as the real estate involved in the sale, and that the majority of time spent in negotiations related to intellectual property issues and

supplier contracts pursuant to which Spirit would sell component parts and subassemblies to Boeing.  The court agrees that negotiations related to intellectual property issues and supplier contracts have no apparent relevance to this case and such materials need not be produced.  However, the gravamen of plaintiffs' lawsuit is that Boeing and Onex schemed to get rid of older employees to reduce health care and pension costs.  Because the negotiations go to the heart of plaintiffs' theory of a scheme, plaintiffs' motion to compel Production Request No. 24 shall be GRANTED, with the exception of negotiations concerning supplier contracts and intellectual property issues.[32]

**Production Request No. 28**

Production Request No. 28 asks Boeing to:

> Produce all documents submitted to any government entity regarding the sale of the Boeing plants at issue in this litigation.

Although plaintiffs list this production request as one of the matters to be compelled in their motion, neither party presents any argument concerning Production Request No. 28. In the absence of any argument, the motion to compel Production Request No. 28 shall be DENIED WITHOUT PREJUDICE.

---

[32] The court recognizes that the negotiations likely include topics having little or no relevance to the claims in this case.  However, because supplier contracts and intellectual property issues apparently made up the majority of the negotiations, the materials ordered produced are greatly reduced.

**Production Request Nos. 29 and 34**

The parties have resolved these two requests and the motion to compel Production Request Nos. 29 and 34 is MOOT.  Doc. 115, p. 1, footnote 1; Doc. 126, p. 19, footnote 6.

**Production Request No. 36**

Plaintiffs move to compel:

> All minutes or notes from any meeting of the corporation, its officers or directors from January 1, 2000 until the present where the age of Boeing's workforce, healthcare costs, pension costs, and/or the sale of Boeing plants was discussed.

Boeing opposes the motion to compel, arguing that the request is overly broad and unduly burdensome.  As previously noted, the court is not persuaded that discovery extending back to January 1, 2000 is warranted and the temporal scope shall be limited to January 1, 2002.  With respect to officers or directors, the court is of the opinion that the request for minutes or notes is sufficiently narrow and appropriate and that portion of Production Request No. 36 shall be GRANTED.  However, plaintiffs' request for notes "from any meeting of the corporation" is too broad because it encompasses *all* employee "meetings" where the sale of the plant was discussed.[33]  The motion to compel notes from any meeting of the corporation shall be DENIED WITHOUT PREJUDICE and plaintiffs may clarify and narrow their

---

[33]  For example, the request would include notes from *any* meeting by lower level employees discussing real estate issues related to the sale--matters that have no relevance to this lawsuit.  Similarly, a meeting between a supervisor and an engineer concerning an environmental report would be included in this request.  Under the circumstances, a request for *all* meeting notes where the sale was discussed is simply overly broad.

request.

**Production Request No. 42**

Production Request No. 42 requests:

> All worksheets and spreadsheets regarding or relating to the decision to sell the Boeing plants in issue.

Although Boeing objects to Production Request No. 42, the motion to compel shall be GRANTED. Boeing has failed to make a showing that the request is overly broad or unduly burdensome. Moreover, the request appears relevant because the documents will show whether pension and healthcare benefits factored into Boeing's decision-making process.

**Production Request No. 51**

Plaintiffs seek to compel:

> All documents received by defendant from any financial consultant, investment banker, or investment service commenting on, recommending, or cautioning a layoff relating in any way with the sale of the Boeing plants that were considered for sale since January 1, 2000.

Although Boeing objects to this request based on a lack of relevance, the court is satisfied that the request is relevant because it is reasonably calculated to lead to the discovery of admissible evidence.[34] Boeing's argument that the request is overly broad is not persuasive

---

[34] For example, a memo from a consultant cautioning Boeing to avoid the appearance of age discrimination may lead to evidence of efforts to conceal discriminatory conduct.

and there is no evidence that gathering the materials would be unduly burdensome.  The motion to compel Production Request No. 51 shall be GRANTED with the caveat that the temporal scope is modified to January 1, 2002.

## Individual Discovery Requests to Spirit

### Production Request No. 11

Plaintiffs move to compel Spirit to produce:

> All documents that show the identity of any person, company, or other entity contacted, consulted, or retained to analyze, review, or otherwise evaluate all financial aspects of the purchase of the Boeing plants at issue in this matter.

Spirit opposes the production request and provides the names and addresses of the 11 consulting firms it utilized during the transaction.  Both Spirit and plaintiffs assert arguments identical to those raised by Boeing and plaintiffs concerning plaintiff's Request No. 13 to Boeing.  For the reasons set forth above concerning Request No. 13, plaintiffs' motion to compel Spirit to produce materials responsive to Production Request No. 11 shall be DENIED.

### Production Request No. 13

Similar to Request No. 15 to Boeing, plaintiffs seek to compel Spirit to produce:

> All documents that reflect any aspect of a financial analysis regarding the purchase of the Boeing plants at issue in this matter.

Sprint opposes the motion, arguing that its records concerning the transaction are voluminous and that the request is overly broad and unduly burdensome.[35]  For the same reasons plaintiffs' motion to compel Request No. 15 was denied, Plaintiffs' motion to compel Spirit to produce all documents responsive to Production Request No. 13 shall be DENIED.

**Production Request No. 17**

> Plaintiffs move to compel Spirit to produce:

>> All studies, reports, or analysis done by internal staff, consultants, government agencies or others related to the pensions, and/or retirement benefits of employees of each Boeing plant that Spirit considered purchasing from Boeing during the relevant time period.

This request is similar to Production Request No. 21 to Boeing.  For the reasons discussed above concerning Request No. 21, plaintiffs' motion to compel Spirit to provide materials responsive to Production Request No. 17 shall be GRANTED.

**Production Request No. 18**

> Production No. 18 requests that Spirit produce:

>> All documents, including but not limited to studies, reports, memoranda, and notices, relating to the analysis of health care benefits of employees at all plants that you considered purchasing from Boeing and the potential cost to health care benefits of

---

[35]   Spirit estimates that it has approximately 14 gigabytes of electronic data concerning the sale.

employees of Spirit.[36]

Similar to Production Request No. 17, plaintiffs' motion to compel studies and reports

related to the analysis of health care benefits and costs shall be GRANTED.

**Production Request No. 20 and Production Request No. 29**

Request No. 20 asks Spirit to:

> Please produce any and all documents that reflect any and all stages
> of negotiations between Spirit and Boeing for the purchase of any
> Boeing plant within the relevant time period.

Request No. 29 asks Spirit to:

> Please produce any and all documents involving negotiations
> (including, but not limited to, all offers, counter offers, memos,
> letters, and rejections) between Spirit and Boeing regarding the
> purchase of any Boeing plant, including the Wichita, Tulsa, and
> McAlester locations within the relevant time period.

These production requests are similar to Production Request No. 24 to Boeing which

asked for materials concerning negotiations.  For the reasons set forth in the order

granting plaintiffs' motion to compel Request No. 24, plaintiffs' motion to compel

Request Nos. 20 and 29 shall be GRANTED with the exception of negotiations

concerning supplier contracts and intellectual property issues.

---

[36]

During the meet and confer process, plaintiffs offered to "limit this request to all
documents that address the costs of pensions and health care as well as all studies and
reports, and memoranda that relate to the analysis of the costs of pension and health care
benefits" but that Spirit still refused to produce the documents.  The court sees no
material difference between the original request and plaintiffs' proposal.

**Production Request No. 21**

Production Request No. 21 asks Spirit to:

> Please produce all documents that comment on the costs and other financial information that Spirit considered during the purchase of the Boeing plants at issue in this case.

Spirit opposes the motion, arguing that the request is overly broad and unduly burdensome. The court agrees. The request for "all documents" commenting on "costs" and "financial information" would include documents on such irrelevant issues as real estate leases, supplier contracts, and tax issues, matters which have no relevance to this lawsuit. Accordingly, the motion to compel Production Request No. 21 shall be DENIED.

**Production Request No. 28**

Similar to plaintiffs' Production Request No. 36 to Boeing, plaintiffs move to compel Spirit to produce:

> All minutes or notes from any meeting of the corporation, its officers, or directors regarding health care costs, pensions, age discrimination, and/or layoffs.

Spirit opposes the motion to compel, arguing that the request is overly broad and unduly burdensome. With respect to officers or directors, the court is of the opinion that the request for minutes or notes is sufficiently narrow and appropriate and that portion of Production Request No. 28 shall be GRANTED. However, plaintiffs' request for notes "from any meeting of the corporation" is too broad because it encompasses *all* employee

-30-

"meetings" where health care, pensions, age discrimination and/or layoffs may have been discussed.[37]  The motion to compel notes from *any* meeting of the *corporation* shall be DENIED WITHOUT PREJUDICE and plaintiffs may clarify and narrow their request.

**Production Request No. 30**

Plaintiffs request that Spirit:

> Please produce any and all documents that reflect the expenses related to the acquisition of Boeing plants, restructuring, and other expenses related to the initial setup of Spirit Aerospace following your purchase of the Boeing plants.

The motion to compel this information shall be DENIED.  Spirit's acquisition and setup expenses have no apparent relevance to the claims in this case and plaintiffs have failed to present any valid rationale for the discovery of this information.

**Production Request No. 39**

Plaintiffs move to compel Spirit to produce:

> All documents, including e-mails, about how the costs of pensions and health care benefits would affect your decision to purchase the Boeing plants at issue.

---

[37]   For example, the request, as presently drafted, would include notes from meetings between an individual employee and a benefit coordinator concerning health care  or pension questions. Under the circumstances, a request for *all* meeting notes where the sale was discussed is simply overly broad.

This information is relevant to the claims in this case and Spirit's arguments that the request is overly broad and unduly burdensome are not persuasive. Therefore, the motion to compel Production Request No. 39 shall be GRANTED.

**Production Request No. 42**

Production Request No. 42 asks Spirit to produce:

> All documents received by defendant from any financial consultant, investment banker, or investment service commenting on, recommending, or cautioning a lay-off or of employees not hired or retained relating in any way with the purchase of the Boeing plants that were considered for purchase since January 1, 2000.

Contrary to Spirit's objection, this request seeks relevant information reasonably calculated to lead to the discovery of admissible evidence. In addition, the request is narrowly tailored to secure information concerning layoff or hiring issues. Accordingly, the motion to compel Production Request No. 42 shall be GRANTED but the temporal scope is limited to a period of time commencing January 1, 2002.

**Production Request No. 46**

Request No. 46 asks Spirit for:

> All documents that were generated during all meetings where decisions were made to extend or not extend offers of employment to Boeing employees.

Plaintiffs have withdrawn this request. Doc. 126, p. 23, footnote 7. Accordingly, the motion to compel Production Request No. 46 is MOOT.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel (**Doc. 97**) is **GRANTED IN PART and DENIED IN PART**, consistent with the rulings set forth above. A deadline for defendants to answer the interrogatories and produce documents will be established after the hearing concerning e-mail production. The hearing will be held on January 26, 2007 at 10:00 a.m. in United States Courthouse, Courtroom 326, 401 North Market, Wichita, Kansas.

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 17th day of January 2007.




                                        S/ Karen M. Humphreys
                                        _____
                                        KAREN M. HUMPHREYS
                                        United States Magistrate Judge