# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PERRY APSLEY, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 05-1368-MLB |
| ) | |
| **THE BOEING COMPANY, THE ONEX** ) | |
| **CORPORATION, and SPIRIT** ) | |
| **AEROSYSTEMS,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs' motion to compel responses to interrogatories and production requests. (Doc. 193). For the reasons set forth below, the motion shall be GRANTED IN PART and DENIED IN PART.

## Background

This lawsuit arises from Boeing's sale of its commercial airplane manufacturing facilities in (1) Wichita, Kansas; (2) Tulsa, Oklahoma; and (3) McAlester, Oklahoma.[1] In

---

[1] The Wichita, Tulsa and McAlester facilities comprised Boeing's "Wichita Division." Boeing also has facilities for "military-related" operations in Wichita which were not sold and are not part of this litigation. In the context of this opinion and the lawsuit, the terms "facilities" or "operations" refer to Boeing's commercial airplane manufacturing business.

2004 Boeing publicly announced its intention to sell its commercial facilities in Wichita and Oklahoma and eventually negotiated an Asset Purchase Agreement with defendant Onex, a Canadian corporation. As part of the transaction, Onex created a new business entity, Spirit AeroSystems Inc., to own and operate the Wichita and Oklahoma facilities.[2]

Spirit announced plans to continue operating the commercial manufacturing facilities. However, Boeing employees who elected to continue employment with Spirit were required to submit applications. After reviewing work records and interviewing Boeing managers, Spirit hired some, but not all, of the Boeing employees who applied.[3] Plaintiffs (Boeing workers who submitted applications but were not hired by Spirit) contend that defendants engaged in a scheme to reduce wage and ERISA costs by eliminating older workers.

Plaintiffs seek to proceed as a class action and allege that Boeing and Spirit engaged in unlawful age discrimination in the layoff and rehire process. Doc. 40, pp. 43-44.[4]

---

[2] The original name of the new company was Mid-Western Aircraft System Inc. However, in July 2005 that name changed to Spirit AeroSystems Inc.

[3] Plaintiffs allege that the "common scheme" of discrimination culminated with major layoffs in May and June of 2005. Doc. 40, p. 35. Boeing denies plaintiffs' claims of discrimination and argues that *all* employees in the affected facilities were terminated by June 16, 2005, the effective date of the Asset Purchase Agreement. Spirit assumed operations on June 17 and the former Boeing employees who were rehired began working for Spirit that same day.

[4] Plaintiffs allege that (1) Onex is the parent company of Spirit, (2) Spirit was not properly capitalized and (3) Spirit and Onex share the same directors, officers and employees. Doc. 40, p. 32. Although not expressly alleged in the complaint, plaintiffs apparently seek to pierce the corporate veil between Onex and Spirit.

Plaintiffs also contend that Boeing and Onex (1) intentionally interfered with their ERISA pension rights, (2) breached collective bargaining agreements, and (3) unlawfully retaliated against employees who had previously exercised protected employment rights.[5] Doc. 40, pp. 45-47. Additional facts and contentions are included in the following analysis of the parties' discovery disputes.

## Motion to Compel

Plaintiffs move to compel (1) Boeing to answer three interrogatories and produce documents responsive to nine production requests and (2) Spirit to answer three interrogatories and produce documents responsive to three production requests. Defendants oppose the motion, arguing that the discovery requests (1) seek irrelevant information, (2) are overly broad and/or (3) are unduly burdensome. Plaintiffs counter that the information requested is relevant and that defendants have failed to show that producing the information is unduly burdensome.[6]

---

[5] Plaintiffs' claims that defendants violated (1) Title VII record keeping requirements by failing to maintain records and (2) other federal statutes by requiring employees to sign releases have been dismissed. Memorandum and Order, Doc. 139, filed December 18, 2006. Defendants' motion to dismiss plaintiffs' remaining ERISA claim has been denied. Id.

[6] Plaintiffs' motion includes a lengthy discussion of the theory of their case and the evidence provided to date with attachments. A recitation of plaintiffs' case and the evidence is unnecessary except to note that plaintiffs have received a substantial volume of discovery concerning Boeing's decision to sell the "Wichita Division" and Spirit's hiring decisions.

-3-

The standards concerning the scope of discovery are well established. Rule 26(b)(1) provides:

> **In General.** Parties may obtain discovery regarding *any matter, not privileged, that is relevant to the claim or defense of any party*, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).* (Emphasis added).

The limitations in Rule 26(b)(2)(i), (ii), and (iii) are:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.[7]

Relevance, at the discovery stage, is broadly construed and generally "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." Sheldon v. Vermonty, 204 F.R.D. 679, 689-90 (D. Kan. 2001)(citations omitted). When the discovery sought appears relevant on its face, the party resisting discovery has the burden of demonstrating that the requested information does not fall within the scope of discovery defined under Rule

---

[7] Rule 26(b)(2) was amended effective December 1, 2006 to address electronic discovery. The limitations described in parts (i), (ii), and (iii) remain unchanged.

26(b)(1).  Hammond v. Lowe's Home Centers, 216 F.R.D. 666, 670 (D. Kan. 2003). Conversely, "when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." Id.

Once the threshold question of relevance has been satisfied, the analysis proceeds to whether the requested information is privileged or otherwise limited by the considerations set out in Rule 26(b)(2)(i), (ii), or (iii). Generally, the party opposing discovery has the burden of demonstrating through detailed explanation, exhibit, and/or affidavit that the request is unduly burdensome or overly broad. See, e.g., Horizon Holdings Inc. v. Genmar Holdings, Inc., 209 F.R.D. 208, 213 (D. Kan. 2002). However, the court may deny a motion to compel where the discovery request is overly board or unduly burdensome on its face. See, e.g., Aikens v. Deluxe Financial Services, Inc., 217 F.R.D. 533, 538 (D. Kan. 2003). With these standards in mind, the court turns to the parties' specific disputes.

## Individual Discovery Requests to Spirit

**Interrogatory Nos. 24, 25, and 28**

Interrogatory No. 24 asks Spirit to

> Identify any variables that you contend are relevant to testing in order to determine whether any statistical analysis that may be conducted to test to determine whether there is a statistical significance sufficient to establish age discrimination, being sure to identify any document you contend supports this contention.

Interrogatory No. 25 asks Spirit to

> Identify any variables that you contend are relevant to statistical

-5-

> analyses conducted in order to determine whether individuals who previously filed grievances, lawsuits, and/or complaints were significantly impacted by the selective re-hire process, being sure to identify any document you contend supports this contention.

Interrogatory No. 28 asks Spirit to

> Identify any variables that you contend are relevant to testing any statistical disparities in the age of workers selectively re-hired, being sure to identify any document you contend supports this contention.

Opposing the motion to compel, Spirit argues that the interrogatories are premature and that it will disclose the relevant variables pursuant to deadlines established by the court for expert witness disclosures.[8] The court agrees. In essence, plaintiffs are asking Spirit to identify the "variables" considered relevant by defendant's experts without seeing plaintiffs' statistical methodology and analysis. Such an exercise would require Spirit to engage in speculation, a process this court rejects. Accordingly, the motion to compel Interrogatory Nos. 24, 25, and 28 is **DENIED WITHOUT PREJUDICE.** Discovery concerning "statistical variables" may be renewed after plaintiffs produce their expert disclosures and reports.

**Production Request No. 68**

Production Request No. 68 asks for any documents "that compare and/or comment on *projected cost savings against actual cost savings* that Spirit experienced between June

---

[8] Spirit asserts that plaintiffs have separately requested and received documents concerning the internal analysis conducted by Spirit as part of the employee selection process and that Spirit is not withholding discovery into how that analysis was done. Plaintiffs concede that they have received such information and are aware of the variables listed in that analysis.

17, 2005 and September 1, 2006." (Emphasis added). In response to Spirit's initial objection that the request was overly broad, plaintiffs agreed to limit the request to labor costs and fringe benefits (including pensions, health care costs and retiree medical expenses). Spirit continues to object to the modified request, arguing that the actual cost savings that occurred *after* the June 2005 hiring process are irrelevant to Spirit's hiring decisions. Spirit also argues that the actual savings are the result of "countless factors" such as "a high demand for airplanes in the post-divestiture time period along with an efficient use of its work force."

The court is satisfied that the requested information is relevant because the modified request seeks documents that discuss Spirit's pre-divestiture "projected costs savings" concerning labor and fringe benefits.[9] Moreover, the production request is narrowly tailored and requests only documents that compare projected costs against actual cost savings for a relatively brief period of time. Accordingly, plaintiffs' motion to compel Production Request No. 68 is **GRANTED.**

**Production Request No. 76**

Production Request No. 76 requests "***any documents*** discussing the costs and benefits in purchasing the Wichita Division." Again, in response to Spirits' initial objection that the request was overly broad and unduly burdensome, plaintiffs modified their request to (1)

---

[9]

Spirit concedes that it has or will produce studies, reports, or analyses relating to pensions, retirement benefits, and health care benefits that were created prior to its June 2005 purchase. Doc. 207, p. 32.

-7-

labor and fringe benefit costs and (2) demographics of the workforce. Spirit maintains its objection to the modified production request, arguing that plaintiffs' modified request continues to ask for "any" document, a request that would require Spirit to examine virtually every e-mail message to determine whether the costs or benefits of labor or fringe benefits were discussed.

The issues of e-mail production and a search protocol are the subject of a separate sampling process which the parties are currently testing and will not be resolved in this ruling. Accordingly, plaintiffs' request for "any" documents shall be **DENIED WITHOUT PREJUDICE.**

**Production Request No. 80**

Production Request No. 80 seeks "to the extent not previously produced, all financial analyses, studies, memos, or reports detailing, referencing, or discussing such financial analyses, that were provided to any member of the team assembled for the purpose of purchasing the Wichita Division referencing the costs, benefits, and/or feasibility of purchasing any Division of the Boeing Company." This request is merely a revised version of a production request previously rejected by this court. Memorandum and Order, Doc. 145, pp. 27-28 (denying motion to compel Production Request No. 13). For the reason set forth in the court's prior ruling, plaintiffs' motion to compel Production Request No. 80 is **DENIED.**

**Individual Discovery Requests to Boeing**

**Production Request Nos. 52, 53, 54, 57, 62, 173, and 175**
  **and**
**Interrogatory Nos. 32, 34, and 35**

Production Request Nos. 52, 53, 54, 57, 62, 173, and 175 and Interrogatory Nos. 32, 34, and 35 seek documents and information concerning the funding and costs of "Boeing's pension plans." Boeing argues that the requests and interrogatories are overly broad and unduly burdensome because the requests seek corporate-wide discovery of irrelevant documents. As explained in greater detail below, the court agrees.

During the relevant time period of 2002 to 2005, Boeing sponsored over thirty different defined benefit pension plans world-wide. Only three of those pension plans had participants from the Kansas and Oklahoma facilities that were sold to Spirit. The three pension plans involved were nationwide plans in which the Wichita and Oklahoma employees participated along with thousands of other employees across the country. More specifically,

> (1) The Boeing North American Retirement Plan (the "BNA" plan) offered pension benefits to union-represented employees in Tulsa and McAlester, Oklahoma. As of January 1, 2005, there were 103,685 participants nationwide in the BNA plan, 750 (or .7%) of which were Tulsa and McAlester employees.
>
> (2) The Boeing Company Employee Retirement Plan (the BCERP" plan) provided pension benefits to union-represented employees in Wichita. On January 1, 2005, there were 160,518 participants nation wide in the BCERP plan, of which 10,300 (or 6.4%) were Wichita employees.
>
> (3) Similarly, the Pension Value Plan for Employees of the Boeing

> Company (the "PVP" plan) provided pension benefits to non-union employees in Wichita, Tulsa, and McAlester. The PVP also covers other Boeing employees across the country. On January 1, 2005, there were 133,534 participants nationwide in the PVP, 2,800 (or 2%) of which were BCA Wichita Division employees.

Because only three of Boeing pension plans were involved in the divestiture that gives rise to this lawsuit, plaintiffs' discovery requests for a broad range of documents from the thirty-plus pension plans is overly broad and unduly burdensome on its face.

Equally important, plaintiffs' requests utilize over-inclusive terms which require the collection and production of large volumes of irrelevant documents. For example, Request No. 175 requests documents "discussing options to reduce current and/or projected pension costs or expenses." However, there are a variety of fees and expenses in pension plans, such as administrative fees for record-keeping, accounting, and trustee services as well as investment management services. Plaintiffs have not shown the relevance of such fees to the claims in this case. Similarly, plaintiffs' production requests and interrogatories ask for all documents "regarding" or "relating" or "discussing" broad pension topics. Such requests are overly broad on their face and rejected.[10] Accordingly, plaintiffs' motion to compel Production Request Nos. 52, 53, 54, 57, 62, 173, and 175 and Interrogatory Nos. 32, 34, and 35 is **DENIED.**

---

[10] By way of contrast, the court previously ordered Boeing to produce the studies, reports, or analyses done by internal staff or consultants related to the pension benefits of employees of *each Boeing plant that Boeing considered selling during the relevant time period.* Memorandum and Order, Doc. 145, pp. 22-23.

**Production Request Nos. 169 and 170**

Request No. 169 asks Boeing to produce "your 2004 quarterly presentations." Request No. 170 asks Boeing to produce "your 2003 financial presentations." Boeing opposes plaintiffs' motion to compel, arguing that the requests are overly broad, vague, and ambiguous. The court agrees. Boeing is a multi-national, publicly traded company which provides numerous "presentations" concerning financial matters every year. Vague requests for "financial presentations" are not sufficient. Accordingly, plaintiffs' motion to compel Production Request Nos. 169 and 170 shall be **DENIED.**

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 193)** is **GRANTED IN PART and DENIED IN PART**, consistent with the rulings set forth above. Defendants shall produce the documents ordered herein on or before **November 30, 2007.**

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards

enunciated by the court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

**IT IS SO ORDERED.**

    Dated at Wichita, Kansas this 24th day of October 2007.

                              S/Karen M. Humphreys
                              KAREN M. HUMPHREYS
                              United States Magistrate Judge