## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

PERRY APSLEY, et al.,            )
                                  )
                Plaintiffs,    )    **CIVIL ACTION**
                                  )
v.                              )    No. 05-1368-MLB
                                  )
THE BOEING COMPANY, THE        )
ONEX CORPORATION, and SPIRIT    )
AEROSYSTEMS,                )
                                  )
                Defendants.    )

---

### MEMORANDUM AND ORDER

This matter comes before the court on defendants' joint motion for partial summary judgment. (Doc. 189.)  The motion has been fully briefed and is ripe for decision. (Docs. 190, 203, 212.)  The motion is GRANTED for the reasons stated herein.

### I.  PROCEDURAL HISTORY

Plaintiffs, former employees of The Boeing Company ("Boeing"), filed suit in December 2005 generally alleging employment-related harms.  Defendants are Boeing, Spirit Aerosystems ("Spirit"), and The Onex Corporation ("Onex").  The case has undergone procedural and substantive manipulations and the following claims remain against defendants: 1) Count I - age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623;[1] 2) Count IV - interference with rights under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140; 3) Count V - breach

---

[1] Plaintiffs allege "pattern and practice, disparate treatment and disparate impact" age discrimination.  (Doc. 40 at 43-44.)

of the collective bargaining agreement between plaintiffs and defendants, assumedly in violation of § 301 of the Labor Management Relations Act ("LMRA"); and 4) Count VII - retaliation.

Plaintiffs' Count VII appears to allege retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), because the plaintiffs allege protected activities stemming from gender and racial discrimination and disability discrimination. In addition, plaintiffs' Count VII alleges retaliation against "individuals who have filed worker's compensation" claims, "exercised [Family Medical Leave Act]" rights, or who "have blown the whistle on managers." (Doc. 40.)

The court has previously outlined the parties' current dispute.[2] (See Docs. 118 at 1-3; 139 at 2-4.)  Boeing sold its commercial division assets to Spirit in mid-2005.  These assets were located in Wichita, Kansas; Tulsa, Oklahoma; and McAlester, Oklahoma.  Spirit is a wholly-owned subsidiary of Onex, created specifically for the purpose of purchasing the Boeing assets.  As part of the sale, Boeing laid off all of its commercial division employees.  These former employees of Boeing were given the opportunity to apply for jobs at Spirit.  A precondition to being considered for employment with Spirit was that the employee complete a "Consent to Release Personnel Information Form."  Plaintiffs are a number of former Boeing employees who were not offered jobs with Spirit.

Plaintiffs allege that Boeing began considering the sale of its

---

[2]   The court's brief summary of the parties' dispute is for background purposes only.  The parties have not attempted to establish or controvert these facts as it is not necessary for resolution of the current motion.

commercial division at least by early 2002.  Presumably in order to make this asset more attractive to potential buyers, plaintiffs contend that Boeing conceived a plan to reduce the average age of its workforce.  This alleged plan involved encouraging older workers to retire or quit, and terminating many who would not leave voluntarily. Plaintiffs claim that Boeing undertook studies of the costs associated with healthcare and pension benefits for older workers, and that those studies showed Boeing that it could significantly reduce its labor costs by eliminating older workers.  Acting on this information, plaintiffs assert that Boeing began terminating older workers as early as January 2002.

Plaintiffs further allege that, at some point, Onex and Spirit (as potential purchasers) became involved in this scheme and conspired[3] with Boeing in furtherance of this plan, basically making the efforts to reduce the age of the workforce an integral part of the deal under which Boeing would sell its commercial division to Spirit. Ultimately, plaintiffs say, the plan resulted in Boeing's decision to terminate its entire commercial division workforce in two mass layoffs that occurred in May and June of 2005.

Plaintiffs' theory is that once Boeing eliminated its workforce in a blanket termination of all employees, Onex and Spirit completed the scheme by selectively hiring back younger employees.  Accordingly, Boeing would appear not to have discriminated because it eliminated all employees, while Onex and Spirit would avoid the liability for

---

[3] Plaintiffs' complaint uses the term conspiracy in its factual background of the case, but no legal claim of conspiracy is made. (See Doc. 40 at 40.)

discrimination because case law generally holds that ERISA does not prohibit age discrimination in hiring decisions.  At least that is plaintiffs' theory.

The parties have brought matters before this court on two prior occasions.  In an order conditionally certifying a class claim on plaintiffs' ADEA count, the court found that plaintiffs had satisfied their minimal burden of making "substantial allegations" of "a single decision, policy, or plan."  See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001) (setting forth standards for determining the propriety of class certification at the "notice stage" of a case).  The court found that:

> notice of the collective action may be sent to all former Boeing employees who were terminated by Boeing on or after January 1, 2002; who were 40 years of age or older at the time of termination; and who were not hired by Spirit.

(Doc. 118 at 7.)  The court extended the time period back to January 1, 2002 because plaintiffs had made substantial allegations that terminations beginning in January 2002 were part of a single policy to rid Boeing of older workers.  The court did not find, as a matter of uncontested fact, that the alleged scheme began in January 2002.

In a footnote, the court also considered whether plaintiffs had made required ADEA filings prior to filing suit.  The court stated:

> Plaintiffs argue that Thiessen allows for a class period extending back beyond the 300-day limit based on mere allegations of a continuing violation. (Doc. 80 at 7.)  Thus, plaintiffs appear to suggest that, since they alleged in their complaint a continuing violation beginning in January of 2002, they are entitled to include all terminations occurring after that date without regard to the contents and timeliness of the EEOC charges that were actually filed. However, a review of Thiessen counsels against

-4-

that conclusion.  The <u>Thiessen</u> opinion did not include the entirety of the actual language of the EEOC charge filed in that case.  Since <u>Thiessen</u> was filed in the District of Kansas, this court reviewed the complaint filed in that case.  Included as an attachment to the complaint was an EEOC charge that contained an extensive narrative chronicling the allegedly discriminatory policies of the defendant in that case.  <u>Thiessen v. Gen. Elec. Capital Corp.</u>, No. 96-2410-KHV, Doc. 4, 1st Am. Compl. attach. 1 exh. B.  The EEOC charge specifically referred to the implementation of the discriminatory policy and its application to plaintiff in September of 1993, <u>id.</u>, from which the Court of Appeals concluded that "the class should, at this stage of the proceedings, include all those plaintiffs whose related claims (i.e., adverse employment actions resulting from application of the blocker policy) arose between September 1993 and 1995." <u>Thiessen</u>, 267 F.3d at 1111.  The EEOC charges provided by plaintiffs in support of this motion do not appear to contain any allegations that would place defendants or the EEOC on notice that the challenged employment activities dated back as far as January of 2002.  (Doc. 81.)

(Doc. 118 at 6-7 n.2.)  Ultimately, the court found that <u>Thiessen</u> required that this question regarding exhaustion not be resolved until the completion of discovery.[4]

The parties have been before this court one additional time.  In an order on defendants' motion for judgment on the pleadings, the court dismissed Counts II and III of plaintiffs' complaint, which sought declaratory judgments that defendants failed to keep proper records and that the consent forms used by Boeing were invalid. Regarding Count IV, plaintiffs' claim under ERISA that defendants discharged or otherwise discriminated against them in an effort to prevent plaintiffs from obtaining and receiving pension and/or

---

[4]  The parties have apparently completed discovery related to plaintiffs' EEOC charges.  <u>See</u> Doc. 190 at 11.

healthcare benefits, the court refused to grant defendants' motion. (Doc. 139.)  After these rulings, the parties conducted discovery, which has been ongoing since that time.

The motion currently before the court is very narrow.  Defendants Boeing, Onex, and Spirit jointly move for summary judgment, based on failure to exhaust administrative remedies, on plaintiffs': 1) ADEA claims (Count I) stemming from conduct occurring prior to January 1, 2005; and 2) those portions of Count VII (retaliation) brought under Title VII and the ADA.  (Doc. 190 at 1-2.)

## II.   UNCONTROVERTED FACTS

The following facts are uncontroverted.  There are one hundred named plaintiffs in this matter.  Of those one hundred named plaintiffs, sixty-six filed administrative charges with the Equal Employment Opportunity Commission ("EEOC") or the Kansas Human Rights Commission ("KHRC") concerning their termination from Boeing and/or failure to be hired by Spirit.[5]

Sixty-one of the named plaintiffs were terminated from Boeing's Wichita facility in May or June 2005 and filed EEOC charges alleging age discrimination.[6]  The earliest of the charges was filed June 18, 2005.  The earliest date specified for the alleged discriminatory

---

[5] At times, it appears defendants are making an issue of whether the named plaintiffs are "Wichita Named Plaintiffs" or "Oklahoma Named Plaintiffs," apparently distinguishing between former employees of Boeing's commercial facilities in Wichita, Kansas versus those in Tulsa and McAlester, Oklahoma.  The court can discern no purpose for this distinction, and defendants point the court to none.  Because the parties refer to the plaintiffs in this manner, however, the court will do so as well.

[6] Specifically, the EEOC charges alleged "pattern and practice, disparate treatment, and disparate impact" age discrimination.

conduct was January 1, 2005. Of these sixty-one Wichita named plaintiffs' EEOC charges, forty-five of the charges: include only the date of January 1, 2005 in listing dates of discrimination; do not mark the box for "continuing action;" and, in the narrative, only discuss the individual's termination from Boeing and failure to be hired from Spirit in 2005.[7] The remaining sixteen, of the sixty-one named plaintiffs terminated from Boeing's Wichita facility, state: that the alleged discriminatory conduct occurred from January 1, 2005 to June 16, 2005; check the box for "continuing action;"[8] and only discuss the individual's termination from Boeing and failure to be hired from Spirit in 2005. All of the sixty-one named plaintiffs marked the box on their EEOC charge for "retaliation." The narrative portion of the EEOC charge, however, contains no mention of retaliation for opposing protected conduct or complaining of gender, race, or disability discrimination.[9]

---

[7] One of the forty-five, Warren Pyles, filed an additional charge with the EEOC. In this additional charge, which appears to only be against Spirit, Pyles alleged he had been retaliated against because of filing EEOC claims in 1997 that resulted in a "pending class action lawsuit." In another section, Pyles stated that the most recent date of the harm was November 17, 2004 to May 30, 2005. In this additional charge, Pyles also stated he wanted to represent all individuals discriminated against on the basis of race.

Information regarding Pyles was presented to the court in plaintiffs' response to defendants' motion. Plaintiffs' counsel is cautioned regarding his behavior in attempting to establish additional statements of fact. Counsel consistently has made statements that, upon inspection of the cited exhibits, were half-truths, misleading, incomplete, or blatantly unsupported by the cited exhibit.

[8] One of these sixteen individuals did <u>not</u> check the box for "continuing action."

[9] For many of the named plaintiffs, the narrative portion of the EEOC charge is identical. For example, many of the narratives state:

      I. I am an individual over the age of forty and

Two additional named plaintiffs were terminated from Boeing's Wichita facility in June 2005 and filed KHRC charges in July 2005. These two plaintiffs alleged a January 1, 2005 layoff, age discrimination, and "retaliation for having openly opposed acts and practices forbidden by the Kansas Age Discrimination in Employment Act." However, neither of these two named plaintiffs marked the box on their charge for retaliation. Neither KHRC charge mentions retaliation based on complaints of race or gender discrimination or the exercise of disability rights.

Two other named plaintiffs, Barbara Odom and Mark McCurdy, were

---

I was employed by Boeing and I was eligible to be hired by Onex.

II. I was laid off by Boeing and not hired by Onex.

III. I was qualified for my position and satisfactorily performed my job duties.
IV. I was forced to sign a waiver under the threat of losing my job and/or not being considered for a position by Onex.

V. I was informed by Boeing that I was laid off and not to report to work prior to the sale of Boeing and was not hired by Onex.

VI. Both Boeing and Onex were instrumental in the decision to lay me off/not hire me. The decision made by Boeing and Onex was based on my age.

VII. Boeing and Onex have violated the pattern and practice, disparate treatment, and disparate impact theories of discrimination under the ADEA. Similarly situated individuals under the age of forty were not affected by Boeing/Onex's decision.

VIII. I seek to represent a class of similarly situated individuals who have been wronged by the illegal actions of Boeing/Onex.

See generally Doc. 190 Exhibits.

terminated from Boeing's Oklahoma facility in June 2005 and filed EEOC charges.  Odom alleged race, age, and disability discrimination based on the June 15, 2005 layoff, signing of the consent form, and failure to be hired by Spirit.  McCurdy alleged age discrimination based on the June 16, 2005 layoff, signing of the consent form, and failure to be hired by Spirit.  Odom listed June 3, 2005 as the date the discrimination took place; McCurdy listed March 15, 2005 to June 16, 2005 as the dates the discrimination took place.  Neither EEOC charge includes class allegations, and Odom and McCurdy did not check the box for "continuing action."  Neither EEOC charge is marked for "retaliation" and neither EEOC charge includes any allegations of retaliation.  In a separate letter to the EEOC, Odom alleged retaliation for her participation in an unrelated gender-discrimination suit against Boeing and based on age discrimination due to incidents in May 2001.

Finally, named plaintiff Daniel Burrows was terminated from Boeing's Wichita facility on August 22, 2003.[10]  Burrows filed an EEOC charge against defendants on June 29, 2005 alleging probable age discrimination based on his 2003 termination.  Burrows stated that the date the alleged discrimination took place was June 16, 2005, almost two years after he was terminated, although he checked the box for "continuing action."  Burrows also checked the box for "retaliation" on his EEOC charge, although he does not allege any acts of retaliation in his narrative.

_____

[10]  Burrows' EEOC form (Doc. 190 Exh. 12) states that he was laid off in 2003.  Defendants' statement of fact 16 states that Burrows was terminated in 2003.   Plaintiffs' response is "uncontroverted." Therefore, the court finds that Burrows was terminated.

## III.   ANALYSIS

### A.   Motion for Summary Judgment Standards

The rules applicable to the resolution of this motion, now at the summary judgment stage, are well known and are only briefly outlined here.   Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).   When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).   If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

### B.   Exhaustion of ADEA Claims Occurring Prior to January 1, 2005.

The ADEA makes it unlawful for an employer to refuse to hire or to discharge an individual because of age.   29 U.S.C. § 623. Defendants move for partial summary judgment on the named plaintiffs' pre-January 2005 individual and collective action ADEA claims, arguing

that no plaintiff has exhausted administrative remedies for conduct prior to January 1, 2005, and that, therefore, the ADEA claims should be limited to events occurring on or after that date.  (Doc. 190 at 12.)  Plaintiffs respond that they have adequately exhausted all ADEA claims back to January 1, 2002.  (Doc. 203.)

Under the ADEA, a plaintiff must exhaust administrative remedies as a prerequisite to suit.   29 U.S.C. § 626(d); Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1308 (10th Cir. 2005).   In general, a plaintiff must exhaust administrative remedies as to each discrete incident of discrimination.  Foster v. Ruhrpumpen, Inc., 365 F.3d 191, 1194-95 (10th Cir. 2004).  For class claims to be exhausted, the class members' claims must, at least, be similarly situated to the exhausted claims of the named plaintiffs.  Id. at 1198 (citing Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1110 (10th Cir. 2001), and noting that the Tenth Circuit either requires that a non-filing plaintiff be "similarly situated" or that the filed charges give notice of the "collective or class-wide nature of the charge" in order for the court to consider a non-filing plaintiff's claim); see also Monreal v. Potter, 367 F.3d 1224, 1233-34 (10th Cir. 2004) (citing Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997) for the proposition that a class claim cannot be exhausted by an individual charge when the agency would not be notified of the complainant's intent to raise class allegations through the filing of an individual complaint).

Plaintiffs argue that their EEOC charges were timely filed based on the "continuing violation" doctrine, which plaintiffs say allows the court to consider acts of alleged discrimination which occurred

-11-

prior to the appropriate limitations period for all of plaintiffs'
claims.  (Doc. 203 at 6-9.)  Although it is not entirely clear what
plaintiffs are trying to achieve, it appears that they want to be able
to recover for acts of discrimination occurring prior to January 2005,
either for themselves or for as-yet-unidentified class members.

The continuing violation doctrine developed in the context of
hostile work environment claims.  The doctrine permits consideration
of unexhausted incidents of alleged discrimination for hostile work
environment claims, as long as "an act" contributing to a hostile work
environment took place within the limitations period for filing the
EEOC charge.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117
(2002).  For the continuing violation doctrine to apply, however,
there must be a relationship between acts alleged after the beginning
of the filing period and the acts alleged before the filing period.
Duncan v. Manager, Dep't of Safety, City & County of Denver, 397 F.3d
1300, 1308-09 (10th Cir. 2005).  In addition, a court can consider the
history of acts comprising the hostile work environment only if the
employee did not unreasonably delay the filing of a hostile work
environment claim.  Id. at 1308.  To make this determination, a court
should look at the type of the acts, the frequency of the acts, and
the perpetrator of the acts.  Id. at 1309.

In Morgan, the court emphasized that discrete discriminatory
acts, as opposed to claims like hostile work environment where the
discrimination does not occur on a particular day and occurs over the
course of time, would not be singularly actionable if time barred,
even if they are related to timely filed charges.  The Morgan court
also stated, however:

-12-

> The existence of past acts, and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

Morgan, 536 U.S. at 113.

Since deciding Morgan in 2002, the Supreme Court has reaffirmed Morgan's ultimate holding that the continuing violation doctrine is not applicable to "discrete acts" of employment discrimination. In Ledbetter v. Goodyear Tire & Rubber Co.. Inc., __ U.S. __, 127 S. Ct. 2162 (2007), the Supreme Court reiterated Morgan's holding that the period for filing a charge of discrimination with the EEOC begins when the act occurs, and that this rule is applicable to all discrete acts of discrimination. Discrimination in termination, failure to promote, denial of transfer, refusal to hire, and pay-setting decisions are all discrete acts. Id. at 2165. Therefore, the Supreme Court has been very clear in recent years that the continuing violation doctrine is not applicable to the discrete act of termination and hiring, the alleged discriminatory practices in this litigation.[11]

Despite this Supreme Court authority, plaintiffs argue that two Tenth Circuit cases, Croy v. Cobe Labs., Inc., 345 F.3d 1199 (10th Cir. 2003), and Thiessen v. General Electric Capital Corp., 267 F.3d

---

[11]  The fact that plaintiffs allege a "pattern and practice" of age discrimination does not change the court's analysis.  A pattern and practice claim is merely a method of styling a particular claim of discrimination.  In this case, plaintiffs allege that it was defendants' pattern and practice to discriminate on the basis of age by terminating and failing to rehire employees over the age of forty. The termination of employment and failure to rehire are still the discriminatory policies, the discrete acts, causing the alleged harm.

-13-

1095 (10th Cir. 2001), support their contention that the Tenth Circuit has left the door open for application of the continuing violation doctrine to claims other than hostile work environment claims.

In <u>Croy</u>, the Tenth Circuit held that because the plaintiff's allegations of a "glass ceiling"[12] in her workplace were "akin to a hostile work environment claim, it is appropriate to look to the entire time period of alleged discrimination in order to determine liability." 345 F.3d at 1203. The court then quoted language from <u>Morgan</u> that Title VII does not "bar an employee from using prior acts as background evidence in support of a timely claim." <u>Id.</u> Ultimately, the court found that none of the alleged acts of discrimination occurred during the limitations period. Therefore, the continuing violation doctrine's requirement that at least one of the alleged discriminatory acts occur during the limitations period was not met and the court refused to consider the plaintiff's untimely discrimination claim. <u>Id.</u> The court in <u>Croy</u> did not apply the continuing violation doctrine to a discrete claim of discrimination. This case does not support plaintiffs' argument, because the claims made here are not "akin to a hostile work environment claim" but are discrete acts with specific dates of alleged harm.

In <u>Thiessen</u>, the Tenth Circuit outlined the trial approach to be taken in class action claims alleging pattern or practice discrimination. 267 F.3d at 1106. A class-based pattern or practice claim asserts that it was the employer's standard operating procedure to discriminate against employees on the basis of a protected

---

[12] The plaintiff in <u>Croy</u> alleged a continuous failure over time to promote a female executive.

characteristic.  Id. at 1105.  A pattern or practice claim changes the burdens imposed on the parties and requires, initially, only that a discriminatory policy existed, rather than that each individual plaintiff was the victim of a discriminatory policy.  Id.  The Thiessen court discussed the continuing violation doctrine, but only based on its reliance on a prior Tenth Circuit case which has subsequently been abrogated by Morgan.  As a result, Thiessen is not supportive of plaintiffs' position that the Tenth Circuit would permit application of the continuing violation doctrine to pattern or practice ADEA claims.[13]

But even if these cases did not exist, the court still would find that the continuing violation doctrine is not applicable to this case. The thrust of plaintiffs' claim is the alleged discrimination that occurred in May and June 2005 when plaintiffs were laid off from Boeing and not rehired by Spirit.  See generally Doc. 40 at 6-9 (generally alleging harm resulting from Boeing's reduction in force and Spirit's failure to rehire Boeing employees).  This is the time frame and factual allegations presented to the EEOC.  See Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997) ("The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an

---

[13]   Plaintiffs cite one additional case in support, Davidson v. Citizens Gas & Coke Utility, 470 F. Supp. 2d 934 (S.D. Ind. 2007). In Davidson, a district court case out of the Southern District of Indiana, the court stated that "the Morgan decision permits the continuing violation doctrine to apply only to remediate hostile work environment or pattern-and-practice claims." Id. at 949.  The court, however, analyzed each of the eight plaintiff's failure to promote claims as distinct acts and did not apply or analyze the continuing violation doctrine in any way.

opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance."). The named plaintiffs alleged no adverse employment action other than the termination and failure to rehire in 2005.[14] The named plaintiffs were apparently employees of Boeing at the time their employment with Boeing was terminated in 2005. Although plaintiffs complaint speaks generally of earlier "test" layoffs by Boeing, plaintiffs have identified no named plaintiff that fits this description and plaintiffs' EEOC charges do not identify any named plaintiff whose employment was terminated prior to 2005. Obviously, the named plaintiffs could have suffered no adverse employment action by Spirit until they were not hired by Spirit in 2005.

Plaintiffs' attempt to establish exhaustion of claims arising prior to 2005 has failed - at most they have pointed out one EEOC charge (from named plaintiff Pyles) that is unrelated to the current litigation[15] and one letter to the EEOC (from named plaintiff Odom) that does not exhaust ADEA claims as to the class.[16] See Foster, 365 F.3d at 1198 (noting that for class claims to be exhausted, the class

---

[14] Merely alleging "pattern and practice" age discrimination does not change the fact that the complained of adverse employment action was a termination in 2005.

[15] Pyles' charge is unrelated because it is an additional charge, against Spirit only, discussing retaliation from 1997 activity and racial discrimination. These allegations are obviously unrelated to the claims made in the complaint to this court. Even plaintiffs do not contend that Boeing's alleged discriminatory acts began prior to January 2002.

[16] Odom's letter to the EEOC is unrelated to the exhausted class claims and discusses singular incidents, against only Odom individually, of May 2001 age discrimination. This is prior to the now alleged January 2002 conduct and Odom's letter in no way indicates or alerts the EEOC or defendants of a class claim.

-16-

members claims must, at least, be similarly situated to the exhausted claims of the named plaintiffs); <u>Monreal</u>, 367 F.3d at 1233-34 (noting that a class claim cannot be exhausted by an individual charge because the agency would not be notified of the complainant's intent to raise class allegations through the filing of an individual complaint).

Regarding their ADEA claims, plaintiffs lastly argue that the charges they exhausted with the administrative agencies with dates beginning in January 2005 were "reasonably related" to the allegations in their complaint stemming to January 2002, and that, therefore, they are entitled to seek judicial relief for incidents not listed in their administrative charge (<u>i.e.</u>, for the incidents occurring between January 1, 2002 and January 1, 2005). (Doc. 203 at 9-13.) Plaintiffs cite <u>Ingels v. Thiokol Corp.</u>, 42 F.3d 616, 625 (10th Cir. 1994)[17] as "governing law" and quote the following statement from that case: "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." (Doc. 203 at 8.) As defendants point out, however, this case was abrogated by <u>Martinez v. Potter</u>, 347 F.3d 1208, 1210-11 (10th Cir. 2003). The <u>Ingels</u> case and the "reasonably related" standard is no longer valid law.

At most, plaintiffs have convinced the court that it may consider

---

[17] In addition to multiple other errors, plaintiffs' counsel incorrectly cites this case as a 2004 decision, rather than a 1994 decision. (Doc. 203 at 8.) Obviously, the ten year difference produced multiple pertinent Supreme Court and Tenth Circuit opinions on this issue.

relevant background evidence in support of plaintiffs' 2005 ADEA allegations.[18]  This practice is permitted by Morgan.  See Morgan, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").  Pursuit of unexhausted claims, however, is not permitted.  As a result, defendants' joint motion for summary judgment as to plaintiffs' individual and collective ADEA claims for alleged conduct prior to January 1, 2002, is GRANTED.

####    C.   **Exhaustion of Title VII and ADA Retaliation Claims**.

Defendants next move for summary judgment on the named plaintiffs' individual and class retaliation claims that are based on alleged gender, racial, or disability discrimination.  Defendants assert that no named plaintiff has exhausted administrative remedies for such claims.  (Doc. 190 at 17.)  Plaintiffs' gender, race, and disability retaliation claims are apparently brought pursuant to Title VII and the ADA.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII also makes it unlawful to retaliate against an employee because the employee has opposed any practice made unlawful by Title VII, or because the employee has "participated . . . in an investigation, proceeding or hearing."  42 U.S.C. § 2000e-3(a).  The ADA, 42 U.S.C. § 12112(a), prohibits discrimination "against a qualified individual

---

[18]   Such evidence, if any, will have to be made by a written offer of proof prior to trial.

with a disability" with regard to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  The ADA also makes it unlawful to retaliate against an employee because the employee has opposed an practice made unlawful by the ADA or because the employee has "made a charge, . . . or participated in any manner" in an ADA-related proceeding.

Similar to the ADEA claims discussed above, Title VII requires a plaintiff to exhaust her administrative remedies prior to suit. Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005).  In addition, before a party can file a claim in federal court under the ADA, that party must first exhaust administrative remedies before the EEOC.  MacKenzie v. City and County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005).  The charge-filing requirements of the ADEA, Title VII, and the ADA are to be construed consistently. Shikles, 426 F.3d at 1310 ("Because we must construe the charge filing requirements of the ADEA and Title VII consistently, to the extent that those requirements are similar, we must also construe the charge filing requirements of the ADEA and the ADA consistently.").

Plaintiffs argue that because sixty-one of the named plaintiffs' EEOC charges checked the box for retaliation, and that two of the named plaintiffs' KHRC charges stated that defendants retaliated against plaintiffs for having exercised rights under the Kansas Age Discrimination in Employment Act, that they have exhausted their

-19-

gender, race, and disability retaliation claims.[19]  Defendants are correct in noting, however, that of the plaintiffs who checked the retaliation box on their EEOC charge, the narratives on the EEOC charge made clear that the alleged retaliation was in regard to the consent forms utilized by Boeing in conjunction with the mass layoffs in 2005.  The narratives, and nothing else on the charge, alerted the agency of any gender, racial, or disability discrimination, and certainly did not identify any employment action taken by defendants in retaliation for a protected Title VII or ADA activity.

As a result, defendants did not have notice of a retaliation claim related to gender, race, or disability discrimination and the administrative agencies did not have an opportunity to investigate and conciliate the same.  See, e.g., Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1195 (10th Cir. 2004) (stating that Title VII's filing requirement "is intended to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims"); Jones v. Denver Post Corp., 203 F.3d 748, 755 (10th Cir. 2000) (stating that an employee must exhaust administrative remedies before bringing suit and holding that when the employee gives notice of only one act of discrimination, she can not bring suit on other, past acts of discrimination); Aramburu v. Boeing Co., 112 F.3d 1398, 1409 (10th Cir. 1997) (stating that a suit "may include allegations of

---

[19]  Plaintiffs also attempt to argue that plaintiff Pyles exhausted a retaliation claim stemming from gender, racial, or disability discrimination.  Pyles' additional charge, however, discusses only retaliation based on a 1997 EEOC claim, wholly unrelated to the current litigation.

discrimination <u>reasonably</u> <u>related</u> to the allegations listed in the administrative charge" (emphasis added)).

Plaintiffs made no charges whatsoever with regard to a gender, race, or disability retaliation claim and it is clear the retaliation they did allege was related only to the consent forms in conjunction with Boeing's 2005 layoffs.  Plaintiffs have not carried their burden in establishing exhaustion, a Title VII and ADA prerequisite to suit. <u>See</u> <u>McBride v. CITGO Petroleum Corp.</u>, 281 F.3d 1099, 1106 ("[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that [the plaintiff] did exhaust.").

Defendants' joint motion for summary judgment on plaintiffs' retaliation claims related to gender, race, or disability discrimination is GRANTED.

**IV.  CONCLUSION**

Defendants' joint motion for partial summary judgment (Doc. 189) is GRANTED for the reasons stated more fully herein.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed five double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau</u> <u>v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992).  The response to any motion for reconsideration shall not exceed five double-spaced pages.  No reply shall be filed.

-21-

IT IS SO ORDERED.

Dated this   29th   day of October, 2007, at Wichita, Kansas.

                              s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE