# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PERRY APSLEY, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 05-1368-MLB |
| ) | |
| **THE BOEING COMPANY, THE ONEX** ) | |
| **CORPORATION, and SPIRIT** ) | |
| **AEROSYSTEMS,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs' motion to amend their complaint (Doc. 235). Defendants oppose the motion. For the reasons set forth below, plaintiffs' motion shall be GRANTED IN PART and DENIED IN PART.

## Background [1]

This lawsuit arises from Boeing's sale of its commercial airplane manufacturing facilities in (1) Wichita, Kansas; (2) Tulsa, Oklahoma; and (3) McAlester, Oklahoma. Highly summarized, plaintiffs allege that defendants engaged in a scheme to lower costs by

---

[1] The nature of this lawsuit has been described in greater detail in prior opinions and will not be repeated except for context.

reducing the age of Boeing's workforce at these plants. In 2004 Boeing publicly announced its intention to sell its commercial facilities in Wichita and Oklahoma and eventually negotiated an Asset Purchase Agreement with defendant Onex, a Canadian corporation. As part of the transaction, Onex created a new business entity, Spirit AeroSystems Inc., to own and operate the Wichita and Oklahoma facilities.[2]

Spirit announced plans to continue operating the commercial manufacturing facilities. However, Boeing employees who wanted to continue their employment with Spirit were required to submit an application. After reviewing work records and interviewing Boeing managers, Spirit hired some, but not all, of the Boeing employees who sought to continue employment with Spirit.[3]

Spirit did not hire the plaintiffs, a group of former Boeing employees. Plaintiffs seek to proceed as a class action and contend that Boeing and Onex engaged in unlawful age discrimination in the layoff and rehire process. They allege three federal claims: (1) age discrimination in violation of the ADEA, (2) interference with ERISA rights in violation of 29 U.S.C. § 1140, and (3) breach of the collective bargaining agreement in violation of the

---

[2] The original name of the new company was Mid-Western Aircraft System Inc. However, in July 2005 Mid-Western changed its name to Spirit AeroSystems Inc.

[3] Plaintiffs allege that the "common scheme" of discrimination climaxed with major layoffs in May and June of 2005. Doc. 40, p. 35. Boeing denies plaintiffs' claims of discrimination and argues that *all* employees in the affected facilities were terminated by June 16, 2005, the effective date of the Asset Purchase Agreement. Spirit assumed operations on June 17 and the former Boeing employees who were rehired began working for Spirit that same day.

LMRA.[4]

## Motion to Amend

Plaintiffs move for leave to make the following changes to their complaint:

   1. the addition of certain factual allegations and other minor changes;

   2. the dismissal of defendant Onex;

   3. the correction of typographical errors; and

   4. the addition of a cause of action for civil conspiracy.

Defendants oppose only two aspects of the proposed amended complaint.[5] First, defendants object to plaintiffs' citation to numerous documents designated as confidential under the Protective Order (Doc. 70). Second, defendants argue that the addition of a conspiracy claim is futile. With respect to the first issue, the parties are continuing to confer; therefore, the court will defer ruling on that issue pending a report by the parties on whether an agreement has been reached. The second issue, futility, is discussed in greater detail below.

The standards for permitting a party to amend his or her complaint are well established. Without an opposing party's consent, a party may amend the pleading only by

---

[4] A number of claims asserted in earlier versions of the complaint have been dismissed. The proposed amended complaint removes those claims which have been dismissed.

[5] Because defendants do not object to the other changes, plaintiffs shall be granted leave to amend their complaint to incorporate those modifications without further discussion.

leave of the court. Fed. R. Civ. P. 15(a).[6] Although leave to amend "shall be freely given when justice so requires," whether to grant leave is within the court's discretion. Panis v. Mission Hills Bank, 60 F.3d 1486, 1494 (10th Cir. 1995)(citing Woolsey v. Marion Labs., Inc., 934 F. 2d 1452, 1462 (10th Cir. 1991)). In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities." Koch v. Koch Industries, 127 F.R.D. 206, 209 (D. Kan. 1989). The court considers a number of factors in deciding whether to allow an amendment, including untimeliness, prejudice to the other party, bad faith, and futility of amendment. Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996).

With respect to futility, "a court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it fails to state a claim upon which relief may be granted." Collins v. Wal-Mart, Inc., 245 F.R.D. 503, 507 (D. Kan. 2007)(citing Ketchum v. Cruz, 961 F.2d 916, 920 (10th Cir. 1992)). In conducting its review, the court assumes the truth of plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). Although viewed in a light favorable to plaintiff, the complaint must "contain enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1969 (2007). "The mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the

---

[6] A party may amend its pleading once as a matter of course before a responsive pleading is filed. The time for amending "as a matter of course" is long past.

complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).[7]

Defendants contend that plaintiffs' proposed conspiracy claim is futile because it is preempted by federal law. Specifically, defendants argue that plaintiffs' conspiracy claim for age discrimination is preempted by the ADEA. Plaintiffs contend that their state law conspiracy claim is not "inextricably intertwined" with their ADEA claim; therefore, preemption does not apply.[8] As explained in greater detail below, the court agrees that the

---

[7] Until recently, dismissal for failure to state a claim was considered appropriate where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Bell Atlantic "retired" this often quoted phrase for a new standard. Ridge at Red Hawk, 493 F.3d at 1177.

[8] Plaintiffs' arguments raise some ambiguity concerning which "underlying wrong" forms the basis for the civil conspiracy claim. Plaintiffs assert in their brief:

> Plaintiffs' civil conspiracy claim is limited to the fact that the defendants and third parties conspired to reduce the age of the workforce which is age discrimination. Thus, the question is whether the plaintiffs' civil conspiracy claims are *inextricably intertwined* with plaintiffs' age discrimination claims.

Doc. 236, p. 6 (emphasis added). However, the "inextricably intertwined" test is used to determine whether a state tort claim is preempted *by the LMRA*. The ADEA and ERISA are separate and distinct statutory schemes. "A true federal preemption argument would require an examination of whether Congress, in enacting the ADEA, intended to exercise its powers under the Supremacy Clause to abrogate the rights and duties that the state law would otherwise recognize." Conyers v. Safelite Glass Corp., 825 F. Supp. 974, 975, fn. 1 (D. Kan. 1993).

During the May 15, 2008 status conference plaintiffs also asserted that their civil

addition of a conspiracy cause of action is futile; thus, plaintiffs' motion to amend to add the new claim shall be denied.

Kansas recognizes civil conspiracy as an actionable tort. Stoldt v. City of Toronto, 234 Kan. 957, 967 (1984).[9] The elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished;(3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. Id. However, civil conspiracy is not an independent cause of action; there must be the "commission of some wrong giving rise to a cause of action independent of the conspiracy." Id.

The problem with plaintiffs' civil conspiracy claim is that the "underlying wrongs" on which plaintiffs rely to support their conspiracy claims are ADEA, ERISA, and LMRA violations. Violations of ADEA and ERISA are governed by a complex statutory scheme that includes detailed administrative remedies and judicial processes. For example, administrative claims must be exhausted before bringing a private claim under the ADEA or ERISA. In addition, liability in an ADEA case is limited to "employers" and punitive damages are capped. Allowing a state-law conspiracy claim based on an ADEA or ERISA violation would permit plaintiffs to make an "end run" around those federal statutory

---

conspiracy claim was based, in part, on violations of ADEA, ERISA, and the LMRA. Although the primary thrust of plaintiffs' civil conspiracy claim is age discrimination, the court also analyzes preemption by ERISA and the LMRA.

[9] Plaintiffs filed no reply brief but clarified during the May status conference that their civil conspiracy claim is based on Kansas common law.

schemes. See Nance v. Maxwell Federal Credit Union, 186 F. 3d 1338, 1342. (11th Cir. 1999). Plaintiffs essentially attempt to use a state common law claim to preempt the federal statutory scheme for ADEA and ERISA violations, an approach which this court rejects.[10] The enforcement of rights created under the ADEA and ERISA must be pursued under the provisions of the ADEA and ERISA, not through alternative state-law mechanisms. Nance, 186 F.3d at 1342-1342; Cf. Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366 (1979)(a federal conspiracy statute may not be used to remedy a violation of Title VII). Accordingly plaintiffs' civil conspiracy claim is preempted by the ADEA and ERISA.

The issue of whether plaintiffs' state law civil conspiracy claim is also preempted by the LMRA involves a slightly different analysis.[11] Section 301 of the LMRA "expresses a federal policy that the substantive law to apply in § 301 cases is federal law, which the courts must fashion from the policy of our national labor laws." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985). Accordingly, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions

---

[10] In response to the court's inquiry during the May conference, plaintiffs explained that the purpose in adding the state law conspiracy claim is to (1) reduce their burden of proof related to the ADEA claim and (2) allow for damages otherwise unavailable under the ADEA.

[11] As noted above, it is less than clear that plaintiffs are pursuing a civil conspiracy claim based on a breach of the collective bargaining agreement. However, out of an abundance of caution, the court addresses whether such a conspiracy claim is preempted by the LMRA.

arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Id. However, "the Supreme Court has also made it clear that 'not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law.'" Garley v. Sandia Corp., 236 F. 3d 1200, 1208 (10th Cir. 2001)(quoting Allis-Chalmers). The test articulated in Allis-Chalmers for determining whether a state law claim is preempted by § 301 is "whether evaluation of the tort claim is *inextricably intertwined* with considerations of the terms of the labor contract." Allis-Chalmers, 471 U.S. at 213 (emphasis added).

To the extent plaintiffs contend that their civil conspiracy claim is based on a violation of the LMRA, the claim is inextricably intertwined with the LMRA claim because the collective bargaining agreement must be evaluated to determine whether a breach of contract occurred. Accordingly, plaintiffs' civil conspiracy claim based on a violation of the LMRA is also preempted by federal law.

Because plaintiffs' state law civil conspiracy claim is preempted by the ADEA, ERISA, and the LMRA, the claim is futile and leave to amend to add such a claim shall be denied.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to amend **(Doc. 235)** is **GRANTED IN PART and DENIED IN PART**, consistent with the rulings set forth above. The parties shall confer concerning plaintiffs' citation to confidential documents. If the parties reach an agreement, the revised amended complaint shall be filed on or before **June**

**10, 2008.** If the parties are unable to reach an agreement, the matter will be taken up at a status conference scheduled by the court.

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 21st day of May 2008.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge