# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PERRY APSLEY, et al.

*Plaintiffs*,

vs.                                             Case No. 05-1368-EFM

THE BOEING COMPANY and SPIRIT
AEROSYSTEMS, INC.,

*Defendants.*

## MEMORANDUM AND ORDER

This case arises out of The Boeing Company's ("Boeing's") sale of the assets of its commercial facilities in Wichita, Kansas, and Tulsa and McAlester, Oklahoma (the "BCA Wichita Division"), to Spirit AeroSystems, Inc. ("Spirit"), in June 2005. Plaintiffs are former Boeing employees who were not hired by Spirit when it purchased Boeing's BCA Wichita Division assets. Plaintiffs brought this lawsuit alleging that Defendants, Boeing and Spirit, violated the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140; § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. The Court issued an Order (Doc. 356) granting Defendants summary judgment on Plaintiffs' ERISA claim, Plaintiffs' § 301 claim alleging that Boeing violated its CBA with the IAM when IAM members who did not receive job offers from Spirit were not allowed to vote on the proposed CBA between Spirit and the IAM, Plaintiffs' ADEA pattern or practice of intentional age discrimination collective action claim, and Plaintiffs' ADEA disparate impact

individual and collective action claims. This matter is now before the Court on Plaintiffs' motion asking the Court to reconsider that Order (Doc. 359). For the reasons stated below, the Court denies Plaintiffs' motion.

The Court has discretion whether to grant a motion to reconsider.[1] The Court may recognize any one of three grounds justifying reconsideration: an intervening change in controlling law, availability of new evidence, or the need to correct clear error or prevent manifest injustice.[2] A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed.[3] Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally.[4]

Here, Plaintiffs do not point to an intervening change in controlling law nor do they point to the availability of new evidence. Rather, Plaintiffs' motion is based entirely on the claim that the Court committed manifest error. Specifically, Plaintiffs argue that the Court erred in the following four ways: (1) not affording them more time to complete additional discovery; (2) failing to follow a decision it had made in an earlier order in this case; (3) not applying the pattern-or-practice framework to their ERISA and ADEA claims; and (4) misapplying the summary judgment standard. The Court will address these arguments in turn.

---

[1] *See Hancock v. City Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

[2] *See Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981); *Burnett v. W. Res. Inc.*, 929 F. Supp. 1349, 1360 (D. Kan. 1996).

[3] *See Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994).

[4] *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

**Time for Additional Discovery**

Citing to Fed. R. Civ. P. 56(d),[5] Plaintiffs contend that the Court should have afforded them more time to perform additional discovery before granting Defendants' motions for summary judgment. In order to receive relief under Rule 56(d), the requesting party must "show[] by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."[6] The Tenth Circuit has interpreted this rule to mean that the requesting party cannot "simply stat[e] that discovery is incomplete but must 'state with specificity how the additional material will rebut the summary judgment motion.' "[7] In its initial Order, the Court denied Plaintiffs' request because Plaintiffs "merely stated what they intend[ed] to do with additional discovery; they [did] not state[] how any additional facts discovered during that time would create a genuine issue of material fact."[8] In their motion, Plaintiffs have again failed to specifically state how any additional material would have rebutted Defendants' motion. Therefore, the Court concludes that its earlier denial of Plaintiffs' Rule 56(d) request was not error.

**Conflict with an Earlier Order Issued by the Court**

Plaintiffs' next contention is that the Court failed to follow a decision it made in an earlier Order denying Defendants' motion to dismiss (Doc. 139). In particular, Plaintiffs claim that the

---

[5]In their motion, Plaintiffs actually cite to Fed. R. Civ. P. 56(f). Under the new version of the Federal Rules of Civil Procedure, which became effective on December 1, 2010, Rule 56(f) has been moved to Rule 56(d). Because this change was not substantive, the Court will refer to Plaintiffs' request as being a Rule 56(d) request.

[6]Fed. R. Civ. P. 56(d).

[7]*Libertarian Party v. Herrera*, 506 F.3d 1303, 1308 (10th Cir. 2007) (quoting *Ben Ezra, Weinstein & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000)).

[8]Doc. 356, p. 12.

Court's ruling in its Order granting Defendants' summary judgment motions is inconsistent with the following statement made in the earlier Order:

> [w]here the net result of the agreed upon conduct was the termination of older workers for the purpose of interfering with attainment of rights protected by ERISA, both the seller and the buyers bear culpability for what amounts to discharging those individuals for reasons of age. Accordingly, Onex and/or Spirit may be held liable under ERISA section 510 if plaintiffs successfully prove they participated in the alleged scheme to get rid of the older workers.[9]

The Court disagrees. As is clear from the quote above, to succeed on their joint-action theory, Plaintiffs needed to show that the buyer and seller acted pursuant to an illegal scheme designed to prevent them from attaining additional rights protected by ERISA. Because ERISA protects only those rights that Plaintiffs were entitled to under the plan in which they actually participated,[10] Plaintiffs needed to present evidence that both Boeing's and Spirit's actions deprived them from accruing additional rights under the Boeing pension plan, the only plan in which they participated, in order for their theory to survive summary judgment. At the summary judgment stage, the uncontroverted evidence showed that Spirit's hiring decisions had no affect on Plaintiffs', or any other workers', ability to accrue additional rights under the Boeing plan. As explained by the Court in its summary judgment Order, it was this failure of proof that doomed Plaintiffs' joint-action

---

[9]Doc. 139, p. 17-18. Contrary to Plaintiffs' assertion, the Court did mention this statement in its summary judgment Order. *See* Doc. 356, p. 18 ("Although hiring decisions and basic operational decisions do not generally, by themselves, violate § 510, they may if they are made pursuant to a scheme that is specifically designed to interfere with an employee's protected ERISA rights. As noted by the Court previously, in such cases, the parties' decisions will be viewed as one, and thus taken together amount to a discharge or discriminatory act." (citation omitted)).

[10]Plaintiffs appear to believe that the Court's interpretation of § 510 as protecting only those rights that an employee is entitled to under the plan they participated in conflicts with its earlier Order. It does not. It is important to recognize that, at the time the Court decided Defendants' motion to dismiss, all that it had in front of it was Plaintiffs' complaint. This complaint only alleged that Defendants schemed together to deprive Plaintiffs of the opportunity of accruing additional ERISA protected rights; it did not further allege that the buyer's hiring decisions affected only Plaintiffs' ability to acquire rights under the buyer's plan, not their ability to obtain additional benefits under the seller's plan. Thus, the issue of whether ERISA protects rights offered under a plan that a plaintiff was not a participant of was not before the Court and was not decided.

theory. This result, the granting of summary judgment on Plaintiffs' joint-action theory because Plaintiffs had not shown that an illegal scheme existed, is completely consistent with the Court's earlier ruling. As a consequence, the Court finds no merit to Plaintiffs' second argument, and, thus, denies Plaintiffs' motion to the extent it is based on it.

**Pattern-or-Practice Framework**

The Court makes short shrift of Plaintiffs' third argument. In its motion, Plaintiffs argue that the Court's questioning of the appropriateness of applying the pattern-or-practice framework to ERISA claims and ADEA claims arising out of a single employment action, which is what Plaintiffs claim the divesture of the Wichita Division was, was error. While it is true that the Court questioned the application of this framework in the context of this case, it is also true that this fact had no affect on the Court's resolution of the matters before it, as it analyzed Plaintiffs' ERISA and ADEA claims under Plaintiffs' proposed framework. Accordingly, this argument does not provide a basis for the Court to vacate its summary judgment Order.

**Application of the Summary Judgment Standard**

Plaintiffs' last argument is that the Court violated the Seventh Amendment by granting Defendants' summary judgment motion on their ADEA claims. The Seventh Amendment does not preclude the entry of all summary judgments, rather, just those that are improper.[11] Therefore, the key question here is whether the Court misapplied the law governing summary judgment when deciding Defendants' motion.

---

[11] *See, e.g., Stanko v. Maher*, 419 F.3d 1107, 1112 (10th Cir. 2005).

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[12] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[13] A fact is "material" when "it is essential to the proper disposition of the claim."[14] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[15]

Before delving into Plaintiffs' arguments, it is necessary to properly frame Plaintiffs' claims. As noted by the Court in its summary judgment Order, "Plaintiffs are not claiming that discrimination was the regular practice for a particular manager or even a particular director group, but rather that it was the standard operating procedure throughout the Wichita Division to discriminate based on age."[16] With that in mind, the Court now turns to the question of whether it erred in concluding that Plaintiffs had failed to produce evidence sufficient to raise a genuine dispute of material fact with regard to its ADEA claims.

Plaintiffs first contend that the Court's conclusion was error because the Court failed to take into account all of their evidence. Implicit within Plaintiffs' argument is that the evidence that the Court did not explicitly discuss in its Order was probative of discrimination, otherwise there would be no basis for claiming that the Court erred in not considering it. The first piece of evidence that Plaintiffs allege the Court ignored is the email exchange between Onyx and its consultants while Onyx was in negotiations with the IAM over the contribution that Spirit would have to make to the

---

[12]Fed. R. Civ. P. 56(a).

[13]*Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[14]*Id.*

[15]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[16]Doc. 356, p. 37.

IAM's pension fund. Contrary to Plaintiffs' assertion, the Court did address this evidence in its Order. In footnote sixty four, the Court stated that the exchange was not probative on the issue of whether age discrimination occurred during the divestiture because the parties to the emails did not select which workers to hire and the content of the emails were not shared with those inside of the corporate hierarchy at the Wichita Division.[17] In their motion for reconsideration, Plaintiffs have not put forth any evidence that calls into question the Court's earlier conclusion relating to this evidence. Therefore, the Court concludes that it did not error in finding it not to be probative of discrimination.

The second piece of evidence is the portion of Jeff Turner's deposition testimony where he stated that older workers generally tend to be more expensive because of experience. This type of statement, which merely reflects a fact of life and is devoid of any disparaging undertones, does not give rise to inference of age bias.[18] Thus, the Court did not error in not finding this evidence probative of discrimination. Similarly, the Court did not err in finding Jim Urso's statement, that at the time of the sale potential buyers would look at the age of the workforce and it would affect their decision to purchase the company, to not be probative. This statement merely reflects a truism of business life and there is no evidence suggesting that the statement was made with any disparaging undertones.

The fourth piece of evidence that Plaintiffs cite to is a document that directs a corporate spokesperson how to respond to the following hypothetical question:

---

[17] *See* Doc. 356, p. 29 n.64 (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994)).

[18] *See, e.g., Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994).

> What benefits/issues do you see in light of the age demographics of your work force? How many employees are of retiree age? How does your labor cost competitiveness compare to some of the other industry players given the relative age of the employees.
>
> Our age demographics provide us a highly tenured, experienced workforce with the knowledge, skills, and abilities that keep us highly competitive. Our average age is 48 and 17% of our population is 55 or older. Average seniority is 19 years so much of the workforce is at or near the top of their wage scale. This has created an hourly situation that says we are 20% above the local market and 30% above the national.

There is absolutely nothing about this hypothetical exchange that suggests that age discrimination played any role in the Wichita divestiture, much less that such discrimination was Defendants' standard operating procedure.

The same is true for the rest of the evidence that Plaintiffs cite to in their motion and that was not explicitly discussed by the Court in its summary judgment Order. Therefore, for these reasons, the Court concludes that it did not error in not explicitly discussing all of the evidence cited by Plaintiffs in their motion in its Order.

Plaintiffs' second basis for claiming error is that the Court failed to draw all reasonable inferences in their favor from the evidence it did discuss in its Order. Plaintiffs contend that the multiple derogatory comments made by low-level managers and Jeff Turner's statement made sometime within a year of the divestiture that Boeing's workforce was getting older and that the managers needed to find ways to do something about it raise a factual dispute as to whether Defendants had a corporate culture of age discrimination that led to older workers being discriminated against on a company-wide level. The Court disagrees. Beginning with the derogatory comments, Plaintiffs have failed once again to put forward authority establishing that the comments of a handful of low-level managers in a company employing thousands of workers is

sufficient to show a corporate policy against older workers.[19] In the absence of such authority, the Court is unwilling to say that these comments create a question for the jury on the issue. As for Turner's statement, Plaintiffs have failed to provide any context for this statement whatsoever. Without any context, the Court cannot say that this ambiguous statement gives rise to a factual dispute as to whether upper management at the Wichita Division held an age bias and this bias infected all those below.[20] Therefore, the Court again concludes that the cited evidence is insufficient to create an issue for the jury.

Plaintiffs next claim that the Court improperly interpreted Dr. Mann's statistical evidence. Plaintiffs first take issue with the Court's ruling that their director group statistics needed to show that a significant number of director groups selected younger workers at a statistically significant

---

[19]In their motion to reconsider, Plaintiffs state that in their response to Defendants' motion for summary judgment they provided cases that clearly showed that these type of comments are sufficient to establish that a corporate policy of age discrimination existed. The Court disagrees. First, all of the cases in Plaintiffs' response dealt with discriminatory comments made by people in high-level positions within the corporate hierarchy, not low-level managers. Second, none of these cases were from this Circuit. Therefore, the cases in Plaintiffs' response do not clearly establish that comments made by multiple low-level managers show a corporate policy of discrimination. In their current motion, however, Plaintiffs do cite to a new case that is from the Tenth Circuit and does discuss comments made by managers, *Furr v. AT&T Techs., Inc.*, 824 F.2d 1537 (10th Cir. 1987). *Furr* is inapposite, though, to the issue of whether comments by a handful of managers, in a company employing thousands of workers, can show discrimination was the company's standard operating procedure, as that issue was not before the court. In *Furr*, the issue before the court was merely whether the plaintiffs had sufficiently showed that the defendant's unlawful discrimination was willful, which the court found that it was because the defendant was made aware, through an earlier court opinion, of the fact that discriminating against workers because of their age violated the ADEA and there was evidence, namely the plaintiffs' managers' ageist comments, that the defendant was still making employment decisions based on age. *See id.* at 1537. Accordingly, *Furr* does not mandate a different result in this case.

[20]*See, .e.g., O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 549 (4th Cir.) ("The second statement, made two weeks prior to O'Connor's discharge, consisted of the following: 'O'Connor, you are too damn old for this kind of work.' O'Connor testified, however, that he did not remember what he and Williams were discussing when this comment was made or whether this comment was in relation to a business matter. Thus, there is no evidence that this statement was made in the context of replacing O'Connor. Without this requisite nexus, this statement evinces no discriminatory intent." (internal citations omitted)), *rev'd on other grounds by* 516 U.S. 973 (1995); *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1459 (10th Cir. 1994) (same (citing *Cone*, 14 F.3d at 531)). As stated by the Court in its summary judgment Order, the only context that is provided for this statement comes from Defendants' evidence, which unambiguously demonstrates that management for the Wichita Division was concerned about their workers' age because it was afraid that a significant number of its workers would retire and leave the company with an inexperienced work force. Such a concern is benign, and does not suggest discrimination.

level in order to establish a prima facie case of company-wide discrimination. There are really two parts to this argument: first, that it was error to require the results to be statistically significant, and second, that it was error to require Plaintiffs' statistics to show that a significant number of the director groups reported statistically significant results adverse to older workers. Beginning with the first part, as explained by the Court in its summary judgment Order, it is well established that, at a minimum, results must be statistically significant before they are probative of discrimination.[21] Accordingly, the first part of Plaintiffs' argument is without legal traction and is rejected. As for the second part, it too lacks merit. It is intuitive that in order for a person to establish, through statistics focusing on individual director groups, that discrimination occurred on a company-wide level, their statistics must show that discrimination occurred across the individual director groups. In their motion, Plaintiffs have not provided the Court with a persuasive reason to deviate from this logic. Therefore, the Court rejects the second part of Plaintiffs' first argument as well.

Plaintiffs' other argument relating to the Court's treatment of Dr. Mann's statistics is that the Court improperly ignored Dr. Mann's aggregate results. Contrary to Plaintiffs' charge, the Court did not ignore these results; rather, it reviewed them and concluded that they were insufficient to establish a prima facie case of company-wide discrimination because they were not practically significant. No doubt Plaintiffs disagree with the Court's conclusion that practical significance is necessary before statistically significant statistics establish discrimination, but they have not put forth binding precedent that mandates a contrary result. As a result, the Court will go with what it continues to believe is the proper approach for accessing statistics dealing with a large number of data points, and, thus, reject Plaintiffs' second argument regarding Dr. Mann's statistics.

---

[21]*See* Doc. 356, p. 26 (citing *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1062 (5th Cir. 1998); *Ottaviani v. State Univ. of N.Y. at New Paltz*, 875 F.2d 365, 371 (2d Cir. 1989)).

Plaintiffs' third basis for claiming error is that the Court wrongly disregarded Dr. Goldberg's opinions. According to Plaintiffs, the Court was free to disregard Goldberg's opinions only if they were conclusory, which Plaintiffs contend the Court improperly concluded they were.[22] Plaintiffs' argument is meritless for two reasons. First, Plaintiffs misstate the law. It is well established that the Court has broad discretion in deciding the admissibility of expert testimony, and that it can disregard it when it relates solely to issues that are "readily within the comprehension and ability of the jury."[23] Second, Plaintiffs misstate the Court's reasoning for disregarding Goldberg's opinions. The Court disregarded these opinions because it concluded they were "lay matters which a jury is capable of understanding and deciding without the expert's help,"[24] not because they were conclusory. As a consequence, Plaintiffs' motion presents no valid reason for the Court to reverse its earlier decision on this issue. Therefore, the Court concludes that it did not error in not considering Goldberg's opinions when deciding Defendants' motions.

In sum, the Court has again reviewed Plaintiffs' evidence, and again concludes that it is insufficient to raise a factual dispute sufficient for any of the afore mentioned claims to survive summary judgment. Accordingly, the Court denies Plaintiffs' motion to reconsider its summary judgment Order.

---

[22]Contrary to Plaintiffs' assertion in their motion, Defendants raised the argument that Goldberg's opinions were improper in their reply to their motion for summary judgment on Plaintiffs' ADEA claim. *See* Doc. 345, p. 8.

[23]*Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1219 (10th Cir. 1998).

[24]Doc. 356, p. 29 n.62. Plaintiffs cite a number of cases from jurisdictions outside of the Tenth Circuit that they believe establish that such opinions are admissible. The Court finds, though, the line of cases to the contrary to be more persuasive, and follows the rule established therein. *See Kotla v. Regents of Univ. of Cal.*, 115 Cal. App. 4th 283, 292 (2004) (collecting cases that have rejected opinions like those offered by Goldberg).

**IT IS THEREFORE ORDERED** that Plaintiffs' motion to reconsider (Doc. 359) is hereby DENIED.

**IT IS SO ORDERED**.

Dated this 28th day of March, 2011.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE