## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PERRY APSLEY, et al.,

     *Plaintiffs,*

  vs.                              Case No. 05-1368-EFM

THE BOEING COMPANY and
SPIRIT AEROSYSTEMS,

     *Defendants.*

## MEMORANDUM AND ORDER

Twenty-six plaintiffs assert claims for age discrimination against Defendants The Boeing Company and Spirit Aerosystems for hiring decisions made in 2005. This matter comes before the Court on Defendants' Motion to Dismiss (Doc. 527) and Plaintiffs' Motion for Rule 54(b) Certification (Doc. 531). Because the Court finds that Plaintiffs have failed to comply with a court order requiring complete responses to discovery requests, the Court grants Defendants' motion to dismiss all remaining claims of all remaining plaintiffs. Because this Order constitutes a final judgment, Plaintiffs' motion for Rule 54(b) certification is denied as moot.

### I. Factual and Procedural Background

This lawsuit was filed as a class action in 2005, alleging age discrimination for hiring decisions arising from Boeing's sale of the assets of its commercial facilities to Spirit. Plaintiffs are former Boeing employees who were not hired by Spirit when it bought Boeing's Wichita

assets. In 2010, the Court granted summary judgment in Defendants' favor on Plaintiffs' collective action claims, which was affirmed by the Tenth Circuit in 2012.[1] In 2013, an amended complaint was filed on behalf of 87 plaintiffs alleging individual counts of age discrimination. In February 2014, 10 plaintiffs were dismissed as a result of settlement agreements.

In March 2014, Defendants filed a motion to compel and asked for sanctions for Plaintiffs' alleged failure to comply with their discovery obligations. As a result of an agreement between the parties, Magistrate Judge Karen Humphreys denied the motion a week later and instead issued an agreed-upon order mandating that Plaintiffs provide "a complete, verified answer to Defendants' interrogatories, a complete response to Defendants' requests for production and all responsive documents, a photograph of themselves, and a signed consent to release records" to Defendants' counsel by April 11, 2014.[2] The order also warned that "[i]f any Plaintiff fails to respond as required in this Order, their claims will be dismissed with prejudice without further notice as a sanction for failure to comply with their discovery obligations and to prosecute their action."[3] The deadline was extended to May 19, 2014, with the admonition that "this new deadline will be strictly and rigidly enforced."[4] The April 2014 order also directed Plaintiffs' counsel to identify inactive plaintiffs who had ceased communication with counsel.

Before the first deadline had passed, 14 more plaintiffs were dismissed as a result of settlements. Two other plaintiffs were dismissed as deceased, leaving 61 plaintiffs. After the second deadline passed in May, 35 plaintiffs were identified as inactive and dismissed without

---

[1] *Apsley v. Boeing Co.*, 691 F.3d 1184, 1194-1207 (10th Cir. 2012).

[2] Order Regarding Defendants' Motion to Compel and for Sanctions, Doc. 509, p. 2.

[3] Order Regarding Defendants' Motion to Compel and for Sanctions, Doc. 509, p. 2.

[4] Order, Doc. 521, p. 1-2.

opposition for failing to comply with the Court's orders. As a result, 26 plaintiffs remain. In June

2014, Defendants filed a Motion to Dismiss (Doc. 527). In July 2014, Plaintiffs filed a Motion

for Rule 54(b) Certification (Doc. 531) to appeal an August 2013 order that awarded Defendants

court costs related to the Court's granting of summary judgment in Defendants' favor. After a

hearing in October 2014, the motions are fully briefed and ripe.[5]

## II. Legal Standard

Under Federal Rule of Civil Procedure 37, a district court has authority to dismiss an

action if a party fails to obey an order to provide discovery.[6] A district court has broad discretion

to use sanctions to make sure that lawyers and parties fulfill their duty to promptly and

responsibly manage the litigation.[7] A dismissal order should be based on willfulness, bad faith,

or some fault rather than an inability to comply.[8] The Tenth Circuit suggests that a district court

consider various factors to decide whether to issue a dismissal sanction: "(1) the degree of actual

prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the

culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the

action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions."[9]

These factors are not required but are offered as criteria the district court may wish to consider.[10]

---

[5] Remarkably, given that the hearing was scheduled to address Plaintiffs' ongoing failure to adequately participate in this litigation by responding as mandated to discovery requests, the Court notes that Plaintiffs' counsel failed to attend the October 22 motion hearing in Wichita.

[6] Fed. R. Civ. P. 37(b)(2)(A)(v).

[7] *Lee v. Max International, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011).

[8] *Id*. at 1321.

[9] *Id*. at 1323 (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).

[10] *Id*.

### III. Analysis

In March 2014, Defendants filed a motion to compel and asked for sanctions for Plaintiffs' alleged failure to comply with their discovery obligations. A week later, Magistrate Judge Karen Humphreys dismissed the motion and issued the following order, which was the result of an agreement between the parties:

> The Plaintiffs shall provide to Defendants' counsel the following by April 11, 2014: a complete, verified answer to Defendants' interrogatories, a complete response to Defendants' requests for production and all responsive documents, a photograph of themselves, and a signed consent to release records. If any Plaintiff fails to respond as required in this Order, their claims will be dismissed with prejudice without further notice as a sanction for failure to comply with their discovery obligations and to prosecute their action. No Plaintiff will be provided relief from this Order absent a showing of extraordinary circumstances in a pleading filed on or before April 18, 2014.[11]

At stake are separate counts of age discrimination alleged by the 26 remaining plaintiffs. Defendants seek dismissal of all 26 plaintiffs with prejudice as a sanction for failure to comply with their discovery obligations as mandated by the order. Specifically, Defendants argue that all 26 plaintiffs should be dismissed for failure to provide complete discovery responses to requests for production and all responsive documents. Defendants have put Plaintiffs into three categories: 12 who produced no documents at all, three who provided no documents regarding income, and 11 who produced some documents regarding income. Each plaintiff provided a photo and a consent form to release information. At issue is whether Plaintiffs complied with the Court's order to provide "a complete, verified answer to Defendants' interrogatories" and "a complete response to Defendants' requests for production and all responsive documents."

---

[11] Order Regarding Defendants' Motion to Compel and for Sanctions, Doc. 509, p. 2.

-5-

Plaintiffs argue that they have produced all relevant documents in their possession and have complied with the Court's orders within the existing rules. Further, Plaintiffs argue that they have provided Defendants with authorizations to obtain all employment records and tax records, making them equally accessible to the requesting party.

It appears that all 26 plaintiffs have provided a verified answer to Defendants' interrogatories. Most of the missing information or documents relate to mitigation of damages. Defendants' arguments center around Plaintiffs' failure to produce documentation about income earned after no longer being employed by Boeing. Defendants' request for production included the following requests:

> 2. W-2s, 1099s, and other documentation of compensation or renumeration you received since January 1, 2004.

> 14. Documents supporting each itemized claim for damages you identified in your answers to defendants' interrogatories to you, such as tax records, financial statements, receipts, medical records, or other documents that support each item of damages you are seeking.

Defendants argue that Plaintiffs had a duty to preserve tax documents relating to their income because they sought back wages dating back to 2005, when the complaint was filed. At the motion hearing, Defendants represented that Plaintiffs' counsel agreed that the documents were owed and that Plaintiffs' counsel planned to request missing tax returns from the IRS. Plaintiffs argue that they have provided signed consent forms to release information, including tax returns. But the Court notes that these forms do not address tax records, only employment and educational records. Defendants represent that none of the 26 plaintiffs have provided the IRS form that would authorize them to obtain copies of their tax information from the IRS.[12]

---

[12] Defendants note that the IRS requires a signed Form 8821 for a taxpayer to authorize disclosure of tax information to a third party. No such form has been produced in this case.

-5-

### A. The Court Must Assess Each of the 26 Plaintiffs Individually

All 26 plaintiffs have provided answers to interrogatories and have responded to Defendants' requests for production. The issue is one of measuring the responses to determine whether those responses are sufficient to avoid the sanction of dismissal. Defendants have addressed each of the 26 plaintiffs' responses individually, noting varying degrees of noncompliance. Because each of the 26 has separate claims that stand or fall on their own merits, the Court also addresses the responses of each plaintiff individually.

### Perry Apsley

Apsley is one of 12 plaintiffs who produced no documents at all and one of 15 identified by Defendants as providing deficient interrogatory answers. Specifically, Apsley did not list his employers or income since 2005. His interrogatory answers to these questions referenced an "attached response," but there were no attachments. Apsley produced no tax documentation.

### Bob Bailey

Bailey did not produce tax returns for 2010 to 2013 despite being informed two weeks before the deadline that they were missing. His response indicated that he submitted tax documents from 2005 to 2009. Bailey indicated that he received retirement beginning in 2009 but did not otherwise indicate that he did not file a tax return from 2010 to 2013. Bailey also reported receiving a disability benefit beginning in May 2013 but provided no documentation of either the nature of the claim or the amount of income. Defendants note that Bailey listed nine potential witnesses but did not describe their knowledge or provide contact information.

### Gary Ball

Ball did not provide any documentation at all despite reporting severance, unemployment, and retirement income. He produced no tax returns or tax records, such as a 1099

that would reflect his income. Defendants note that Ball previously had provided pretermination W-2s from 2002 to 2004 earlier in the litigation but none in response to the current request.

**Thomas Belton**

Belton did not provide any tax returns. He was not employed after leaving Boeing, but he indicated that he earned income from unemployment, retirement, and social security. He produced W-2s and 1099s for each year from 2005 to 2012. But he did not produce any documentation of his social security income and no documentation of income for 2013.

**Rocky Burris**

Burris lists eight years of income dating back to 2005, but his interrogatory answer did not list the source of income as requested. The listing of specific dollar amounts suggests that he referenced documentation, but he did not provide any documentation at all. Defendants noted that they informed Plaintiffs' counsel of this deficiency two weeks before the deadline, and it was not corrected. Burris did not provide any W-2s, 1099s, or tax records. His response to request for production No. 14 referred to an attached document, but no attachment was provided.

**Lloyd Fansler**

Fansler provided no documentation related to his income despite stating that he took early retirement from Boeing in 2006. Defendants acknowledge that Fansler provided some documents related to severance pay from Boeing in 2005. But otherwise, Fansler failed to identify the amount of his income as required by interrogatory No. 2 and did not produce any tax returns or tax records documenting his income.

**Brian Groom**

Groom provided some income documentation. Specifically, he provided a 2005 tax return and a draft of his 2008 tax return. But he did not provide tax returns for 2006 to 2007 or 2009 to

-8-

2013. Groom's interrogatory answers indicate that he was employed at least from 2005 to 2009 and from 2011 to 2013. He produced W-2s for 2008 and 2009 but no documents relating to his income in 2006 and 2007 or from 2010 to 2013. His response to interrogatory No. 2 was that his self-employment with a construction company was legally zero, but he deducted $96,000 in income from the company in his calculation of damages in interrogatory No. 7. Defendant conceded the possibility that Groom may not have filed a tax return every year but that was not expressly indicated in his response. Defendants note that they notified Plaintiffs' counsel two weeks before the deadline that most of Groom's tax returns were missing.

**Ron Hendershot**

Hendershot provided no documentation at all, including no tax records and no tax returns. He reported severance and unemployment income but attached no documentation as requested. Defendants also note that Hendershot responded four days late but are not seeking dismissal for that reason.

**Dale Jayne**

Jayne did not produce any documentation regarding his post-termination income, either in the form of W-2s or tax returns, from 2005 to 2012. The only documentation Jayne provided was his 2013 tax returns, and he was the only plaintiff to do so. Jayne listed five employers since 2010 but did not provide income amounts or documentation of income, except for the 2013 tax return. In response to an interrogatory seeking income amounts since 2005, Jayne responded that documentation was attached but only information from 2013 was attached.

**Gary Johnson**

Johnson listed specific income amounts from unemployment and retirement but provided no documentation or no tax returns at all. He also listed more than 30 names in response to

interrogatory No. 10, which requested him to identify potential witnesses, "including a description of the substance of each such person's knowledge or information." Johnson provided no such descriptions or contact information for any of the names listed.

**Donald Jones**

Jones listed two jobs since 2007 in his interrogatory response, and he indicated he received retirement and unemployment income. Jones provided seven years of salary figures, down to the penny, for one employer since 2007. But he did not provide any documentation at all for this income, or any other income, in the form of W-2s, 1099s, or tax returns. The listing of specific amounts suggests that Jones possessed such income documentation, but he failed to provide it to Defendants as required.

**Danny Kennedy**

Kennedy produced no tax returns. He provided a self-produced income summary that listed specific dollar amounts for income earned from 2004 to 2012. He produced W-2s and 1099s for 2004 to 2007 but none from 2008 to 2013. He also listed income from substitute teaching and self-employment in 2007 and 2008, but he produced no documentation from either. Kennedy also indicated that he earned an associates degree from Cowley County Community College but provided no documentation as requested.

**Freddy McColpin**

McColpin produced no tax returns despite listing employment from 2005 to 2011. He produced income information in the form of W-2s and 1099s from 2005 to 2010, but he provided no income documentation for 2011 to 2013 despite listing wages in 2011 and unemployment and retirement starting in 2012. Defendants also point out that he indicated that he graduated from Friends University in 2006, but he provided no documentation as requested.

**Cathy Munsell**

Munsell did not produce any tax information, either in the form of W-2s or tax returns, to document her income from 2009 to 2012. In response to interrogatory No. 2, Munsell listed income amounts, down to the penny, for each year from 2005 to 2013. These amounts suggest that Munsell possessed documentation that she used to prepare her answer, but she provided no documentation for 2009 to 2012 as requested. Munsell produced tax returns for 2006 to 2008. She also produced partial income information for 2013 but left blank income amounts from two jobs despite responding in May 2014. She provided no documentation related to her income for 2013. Defendants also note that Munsell listed three potential witnesses but did not indicate what their knowledge was.

**Kent Owen**

Owen provided no documentation at all despite listing income from two jobs, severance, unemployment, and pensions. He lists one employer from 2006 to present with a varied annual income of $40,000 to $120,000 but, again, provides no W-2s or tax returns as requested. He also lists five potential witnesses with no contact information or any description of their knowledge.

**James Porter**

Porter included no income information, neither amounts beyond hourly rates nor documentation, from three jobs he listed from 2006 to 2008. And no amounts other than severance pay were deducted from his damages estimate in response to interrogatory No. 7. The only documentation of any kind that Porter produced was a job search record, which Defendants characterized as 18 pages and unreadable. Other than that, Porter provided no documentation of income in the form of W-2s or tax records and no estimate of post-termination income earned despite listing three jobs.

**Willard Ratchford**

Ratchford produced no tax returns. He listed four employers since 2005, including a current job held since 2010. Ratchford listed annual income totals and provided some W-2s and 1099s for 2005 to 2012. But he provided no amounts or documents related to 2013 income. In response to interrogatory No. 14 seeking tax records, Ratchford referenced an attachment, but Defendants represent that he produced no tax returns.

**Richard Roeder**

Roeder listed two jobs since 2010 and listed specific dollar amounts for income from severance, unemployment, pension, and wages since 2005. But he did not provide any documentation at all for this income either in the form of W-2s, 1099s, or tax returns. Defendants also note that Roeder answered an interrogatory by stating he was enrolled in college, but he failed to provide documentation as requested in the request for production.

**Albert Schloetzer**

Schloetzer did not provide any documentation at all despite reporting income from unemployment, disability, and retirement. He produced no tax records or tax returns. Defendants note that Schloetzer responded four days after the May 19 deadline.

**Joseph Schroeder**

Schroeder provided a detailed chart showing his income, down to the penny, from various sources from 2005 to 2012. But he failed to provide any income documentation in response to requests for production No. 2 and No. 14, either in the form of W-2s or 1099s or tax returns. In response to Interrogatory No. 2 seeking income information, Schroeder responded, "See Request for Production of Documents regarding tax returns from 2005 through 2012," but no such information was provided. The listing of specific income amounts suggests that he

referenced documentation to produce the chart, but he did not provide any documentation related to his income. Defendants note that Schroeder did not include income information for 2013 despite responding in May 2014. The only documentation Schroeder provided was a list of employers and six emails related to seeking employment in 2006.

**Sammy Smith**

Smith listed five employers since 2005 but provided no documentation such as W-2s or tax returns to verify his income. He also failed to list the amount of income from these five jobs, revealing only that he received severance from Boeing and some unemployment benefits. He provided no income or tax documentation at all despite listing five jobs since 2005.

**Donald Titus**

Titus listed six jobs since 2006, including a current job since 2012. But Titus provided no documentation related to his income, either in the form of W-2s or tax returns. Nor did Titus provide amounts from any of these jobs in response to interrogatory No. 2 seeking income information. The only documentation provided was a one-page listing of total income amounts for each of seven years from 2005 to 2011. The list includes specific dollar amounts, which suggests that he referenced documentation to prepare the list but did not produce any of the documentation that he appeared to possess.

**James R. Wallace**

Wallace provided no tax returns and no income documentation despite listing two employers from 2006 to 2013. He also listed severance and retirement income but produced no documentation. He listed hourly rates for his two jobs but did not provide annual income totals as requested. In response to interrogatory No. 7, Wallace provided amounts representing new salary, retirement, and severance down to an exact dollar amount, which suggests that he

possessed documentation to arrive at these amounts. But he produced no such documentation as requested. The only documentation Wallace produced was one page of a social security earnings record.

### Jimmy Wallace

Wallace did not produce any tax returns except for 2005. He has been employed by the same employer since 2005, and he indicated he earned $409,031.70 in wages from that job. Wallace provided W-2s and 1099s for 2005 to 2011. He produced no documentation for income for 2012 and 2013 despite indicating that he was employed. The listing of a precise income amount since 2005 suggests Wallace possessed documentation used to arrive at a total amount. Some, but not all, documentation was produced.

### Richard Wallin

Wallin did not provide any documentation at all despite reporting unemployment and retirement income. Defendants note that Wallin's interrogatory answers were sufficient, but his response to Defendants' request for production was two days late despite not producing any documents.

### Sylvester Williams

Williams lists two jobs since 2007 but did not list any income from these jobs in response to an interrogatory seeking income information. He listed income from severance, unemployment, and retirement but provided no documentation at all for any income. In calculating his damages in response to interrogatory No. 7, Williams deducted $198,071.40, which suggests that he referenced documentation in his possession to arrive at this exact figure. He provided no such documentation to Defendants as required. He also indicated that he received a bachelor's degree from Friends University but failed to provide documentation.

**B. Noncompliance of Each Plaintiff Warrants Dismissal of All Claims**

To summarize, the Court finds that none of the 26 plaintiffs have complied with Judge Humphreys' order. Specifically, none of the 26 complied with the order to provide "a complete response to Defendants' requests for production of and all responsive documents." The common denominator among all 26 plaintiffs is that no one provided tax returns for all years from 2005 to 2013 as required. In an employment discrimination case such as this, a terminated employee must mitigate damages, and post-termination income shows an employee's effort to satisfy this obligation.[13] Here, Defendants sought tax returns to verify that all income had been disclosed. Coordinating nine years of tax returns for 26 plaintiffs is a daunting task, but it is a task that Plaintiffs' counsel signed up for and agreed it could complete by May 19. As part of the agreement, Defendants withdrew their motion to compel and motion for sanctions.

In their written response to the motion, Plaintiffs do not dispute that Defendants are entitled to their tax returns. Plaintiffs only argue that Defendants have equal access to the documents because they provided signed consent forms so that Defendants can obtain their tax returns. But this is not true. The consent forms provided to the Court only address employers and educational institutions. Therefore, the missing tax returns are not equally accessible to Defendants. And the failure of each of the 26 plaintiffs to provide tax returns or access to tax returns for each year is not compliant with the court order and is grounds for dismissal. In addition, many plaintiffs have failed to produce documents aside from tax returns that support dismissal.

---

[13] *See Sellers v. Mineta*, 358 F.3d 1058, 1066 (8th Cir. 2004).

The factors suggested by the Tenth Circuit weigh in favor of dismissal of Plaintiffs'

actions as a sanction. First, Defendants have been prejudiced with multiple delays, extensions of

deadlines, and incomplete information to assess each plaintiff's case. Second, Plaintiffs have

interfered with the judicial process by failing to completely respond to Defendants' discovery

requests even after the Court issued two orders compelling them to do so. Plaintiffs' counsel also

disregarded the judicial process by failing to appear at the motion hearing. Third, Plaintiffs are

culpable for their inaction. As noted, Defendants alerted some Plaintiffs of their discovery

deficiencies before the deadline, but no additional information or documents were provided.

Plaintiffs were fully aware of the potential consequences of their inaction as evidenced by their

agreement to produce documents by May 19 or face dismissal.[14]

Dismissal is a severe sanction. But most significant to the Court, Plaintiffs were warned

that dismissal was the sanction for noncompliance. As noted, the court order at issue was the

result of the Plaintiffs' agreement to completely respond to discovery requests or have their cases

dismissed. Specifically, the order warned that the deadline would be "strictly and rigidly

enforced" and that no further extensions would be granted. Therefore, Plaintiffs had ample

warning that dismissal with prejudice would result.

Finally, the Court finds that there is no sanction short of dismissal that would be

effective. After reviewing the record and the nine-year history of this litigation, Plaintiffs have

been given multiple opportunities to respond to Defendants' discovery, which is information

Defendants are entitled to have. Despite being warned that their lawsuits would be dismissed for

---

[14] The Court also notes that Plaintiffs made no attempt to provide additional documents during the five months between the deadline and the motion hearing. The Court acknowledges that Defendants would be entitled to argue untimeliness, but the lack of effort adds to Plaintiffs' apparent lack of interest in pursuing this case.

failing to comply, Plaintiffs fell significantly short of the obligations outlined in Judge Humphreys' order. Though the order warned Plaintiffs that their claims would be dismissed "without further notice," the Court initiated a hearing that Plaintiffs' counsel chose not to even attend. This inaction exemplifies a pattern of nonparticipation that leads the Court to find that a lesser sanction would not deter further noncompliance. Therefore, the Court concludes that dismissal with prejudice is the appropriate sanction for all 26 plaintiffs.

Because this Order dismisses all remaining claims, this Order constitutes a final judgment. Therefore, Plaintiffs' Motion for Rule 54(b) Certification (Doc. 531) is moot.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 527) is hereby **GRANTED** with prejudice. Plaintiffs' Motion for Rule 54(b) Certification (Doc. 531) is **DENIED** as moot.

**IT IS SO ORDERED**.

Dated this 6th day of January, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE